**Bob G. WILKINS, Plaintiff–Appellant,**

v.

**BAPTIST HEALTHCARE SYSTEM, INC.; Life Insurance Company of North America, Defendants–Appellees.**

No. 97–5074.

United States Court of Appeals,
Sixth Circuit.

Argued March 12, 1998.

Decided Aug. 4, 1998.

Leslie Rosenbaum (argued and briefed), Rosenbaum & Rosenbaum, Lexington, Kentucky, for Plaintiff–Appellant.

Ronald L. Green (argued), W.T. Adkins, Michael J. Cox (briefed), Boehl, Stopher & Graves, Lexington, Kentucky, for Baptist Healthcare System, Inc.

Samuel G. Bridge, Jr. (argued and briefed), Michelle D. Wyrick (briefed), Wyatt, Tarrant & Combs, Louisville, Kentucky, for Life Ins. Co. of North America.

Before: RYAN, COLE, and GILMAN, Circuit Judges.

COLE, J., announced the judgment of the court and delivered an opinion, in which RYAN and GILMAN, JJ., concurred except

as to Part II.F. GILMAN, J. (pp. 617–620), delivered a separate opinion, in which RYAN, J. concurred, which constitutes the opinion of the court on the issue addressed in Part II.F.

COLE, Circuit Judge.

Plaintiff, Bob Wilkins, appeals the district court's grant of summary judgment in favor of defendants, Life Insurance of North America ("LINA" or "the Plan Administrator") and Baptist Healthcare System, Inc. ("Baptist Healthcare"), and the district court's denial of Wilkins's motion to alter or amend the judgment, pursuant to Fed R. Civ. P. 59(e), in this ERISA action for disability benefits under the Baptist Healthcare Long Term Disability Plan ("the Plan").

Wilkins raises the following issues on appeal: (1) whether the district court erred in affirming LINA's denial of Wilkins's claim for long-term disability benefits; (2) whether the district court erred in refusing to consider evidence not included in the administrative record; (3) whether Wilkins is entitled to compensatory damages, pursuant to 29 U.S.C. § 1132(a)(3); (4) whether a claimant for benefits under 29 U.S.C. § 1132 is entitled to a jury trial; and (5) whether the district court erred in disposing of Wilkins's claim by granting the defendants' motion for summary judgment.

For the following reasons, we **AFFIRM** the judgment of the district court.

## I.

### A. Background

Wilkins, a former housekeeper and janitor for Baptist Healthcare, claims that as a result of a rotator cuff injury in his shoulder he became totally disabled in February of 1993. Wilkins last worked for Baptist Healthcare on February 19, 1993. On June 15, 1993, Wilkins applied for long-term disability benefits with LINA, Baptist Healthcare's ERISA insurer and plan administrator. On November 23, 1993, based on "the accumulated occupational and medical evidence" as well as an independent medical examination of Wilkins by Dr. James E. Russell, LINA notified Wilkins that he did not qualify for disability

benefits under the Plan because he was not totally disabled. LINA also advised Wilkins of his right to appeal the denial of his claim by submitting a written request for review, along with any supporting documents, within sixty days of receipt of the denial letter.

After LINA denied Wilkins's claim, and shortly before his time to appeal expired, LINA received a letter from Wilkins's physician, Dr. Phillip Corbett, stating that Wilkins could not lift more than forty pounds and that his shoulder had been "giving way." Wilkins never filed a written appeal of LINA's denial of benefits. Apparently believing that Wilkins's submission of Dr. Corbett's letter was an attempt to contest its denial of benefits, LINA sent Wilkins a letter, advising him of the procedure for perfecting an appeal.

On August 9, 1994, Wilkins filed his complaint in district court, alleging that LINA's denial of benefits was "arbitrary, illegal, capricious, unreasonable, discriminatory, not made in good faith, and ... an abuse of discretion," in violation of 29 U.S.C. § 1001 et seq. Wilkins requested the following relief: (1) an order that LINA and Baptist Healthcare award Wilkins benefits under the Plan retroactive to May 1993; (2) a declaration that Wilkins was totally disabled and entitled to benefits under the Plan, or in the alternative, the award of a money judgment "for all sums due and owing"; (3) prejudgment interest accruing from May 31, 1993; (4) a jury trial; (5) attorneys' fees; (6) costs incurred in this action; and (7) any other relief that the court would "deem just and proper."

After Wilkins initiated this action, his attorney claimed that he had submitted additional medical information relating to Wilkins's condition to LINA on April 26, 1994. Although LINA was unable to locate the additional information in its files, it agreed to review its decision on Wilkins's claim, waiving any defense based on the late submission of information. The supplemental medical information included office notes from Dr. David Caborn from January and February of 1994, a letter from Dr. Charles Combs dated March 21, 1994, a January 19, 1995 report from Dr. Corbett, and a February 11, 1994 Magnetic Resonance Imaging film ("MRI")

and the accompanying report by Dr. William J. Vanarthos ("Vanarthos MRI"). LINA sent all the medical information it had considered, including the supplemental information submitted in 1994 and 1995, to the Medical Assessment Clinic in Louisville, Kentucky for a final, independent review of its decision. Dr. James Harkness of the Medical Assessment Clinic reviewed Wilkins's records. Relying on the independent medical examination of Wilkins that Dr. Russell conducted in October 1993 and the independent records review of Dr. Harkness, LINA again denied Wilkins's claim for benefits on May 4, 1995. Meanwhile, Wilkins's lawsuit against LINA and Baptist Healthcare proceeded.

## B. District Court Orders

On May 30, 1995, LINA, joined by Baptist Healthcare, filed a motion for summary judgment. The district court granted the motion in favor of the defendants, reasoning that "both the Supreme Court and the Sixth Circuit have made clear that money damages are not available under 29 U.S.C. § 1132(a)(3)." The district court likewise rejected Wilkins's request for a jury trial, reasoning that this court's precedent denying jury trials in actions for recovery of benefits, under 29 U.S.C. § 1132, was well settled.[1]

In his complaint, Wilkins had petitioned the district court to review LINA's denial of benefits and consider information that was not part of the administrative record at the time LINA denied Wilkins's claim. The district court declined to consider this additional information, relying on this court's holdings limiting the district court's scope of review to the administrative record. Reviewing the administrative record de novo, the district court affirmed LINA's November 23, 1993 denial of benefits, citing a "lack of objective medical evidence showing the basis for [Wilkins's] complaints of pain." The district court then affirmed LINA's May 4, 1995 denial decision, considering the medical information submitted after the November 1993 denial, including the Vanarthos MRI. In granting the defendants' motion for summary

judgment, the district court acknowledged an "apparent conflict in some of the medical opinion[s]," but concluded that "the bulk of the accumulated evidence" supported a denial of Wilkins's claim.

Subsequently, Wilkins filed a motion to alter or amend judgment, pursuant to Fed. R.Civ.P. 59(e), conceding that the November 23, 1993 denial of his claim was correct, but insisting that the Vanarthos MRI provided objective evidence that Wilkins was entitled to benefits prior to the May 1995 denial. Wilkins also contended that the district court's grant of summary judgment in favor of the defendants failed to address all the issues he had raised in his complaint. First, Wilkins referred to the allegation raised in his third amended complaint that he did not receive a full and fair review of the denial. Second, Wilkins directed the district court's attention to the alleged violations of the defendants' fiduciary duties, raised in the first amended complaint and the tendered second amended complaint.

In support of his argument, Wilkins claimed that LINA's attorney questioned Dr. Harkness concerning the significance of Dr. Vanarthos's analysis of the MRI. Because Dr. Harkness did not specifically confirm that he had read the MRI and subsequent medical evidence, Wilkins claimed that LINA denied him a full and fair review, without the benefit of expert advice concerning the significance of the MRI, thereby breaching its fiduciary duty to Wilkins "not to deal with plan assets for its own interest and own account." Therefore, Wilkins requested that the district court require LINA to depose Dr. Harkness, to compel him to give an opinion of the MRI, or, in the alternative, that the district court grant Wilkins permission to depose Dr. Harkness to preserve Wilkins's right to a full and fair review. In addition, Wilkins requested permission to depose LINA's attorney to determine the reasons he considered Dr. Harkness's acknowledgment of the MRI to be important.

---

1. The district court rejected Wilkins's claim that his case was distinguishable from this court's holdings denying jury trials in ERISA cases because his was a breach of contract action seeking money damages, reasoning that Wilkins's claim was "nothing other than a claim for recovery of benefits under 29 U.S.C. § 1132."

The district court rejected Wilkins's contention that LINA's second denial of benefits was incorrect, noting that it had considered the entire administrative record, including the Vanarthos MRI, in affirming LINA's denial of Wilkins's claim, and remained unconvinced that it should alter its previous decision. Responding to Wilkins's contention that the district court failed to address the issues he raised in his third amended complaint, the district court noted that it had denied Wilkins's motion to file a third amended complaint. Finally, the district court addressed Wilkins's claim that LINA breached its fiduciary duty, stating that "it is not appropriate to afford [Wilkins] additional, alternative relief for breach of fiduciary duty based on what the Court agrees is a correct benefit denial decision."[2] The district court concluded, "Congress provided a remedy for [Wilkins's] injury in [29 U.S.C. § 1132(a)(1)(B)] and [Wilkins] availed himself to that remedy. The court provided [Wilkins] with a *de novo* review and concluded that the denial of benefits was correct. Thus … it is not appropriate to grant [Wilkins] other equitable relief on the basis of his claims of breach of fiduciary duty and failure to provide a full and fair review." The district court accordingly denied Wilkins's motion to alter or amend its judgment.

Wilkins now appeals both the district court's order granting summary judgment in favor of the defendants and its order denying his motion to alter and amend that judgment.

## II.

### A. Standard of Review

■ We generally review a denial of a motion to alter or amend the judgment under Rule 59(e) for an abuse of discretion. *See*

Huff v. Metropolitan Life Ins. Co., 675 F.2d 119, 122 (6th Cir.1982). However, when the Rule 59(e) motion seeks review of a grant of summary judgment, as in the case at bar, we apply a *de novo* standard of review. *See Columbia Gas Transmission Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir.1991) (citation omitted). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there are no genuine issues of material fact for trial, and the moving party is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ With respect to review of the plan administrator's denial of benefits, both the district court and this court review *de novo* the plan administrator's denial of ERISA benefits, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.[3] *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). This *de novo* standard of review applies to the factual determinations as well as to the legal conclusions of the plan administrator. *See Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 435 (6th Cir.1997).

### B. Denial of Benefits

■ Wilkins contends that the district court erred in affirming LINA's denial of his claim for ERISA disability benefits. Specifically, Wilkins argues that the district court did not appreciate the significance of the Vanarthos MRI when it affirmed the May 4, 1995 denial of benefits and concluded that "the bulk of the accumulated evidence sup-

---

**2.** Wilkins relied on *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), to support his argument that he was entitled to a separate cause of action for breach of fiduciary duty. The district court distinguished *Varity*, noting that the Supreme Court limited this cause of action, under 29 U.S.C. § 1132(a)(3), the "catch-all" provision of the statute, to circumstances in which the employer deceived the employee-beneficiaries of the insurance plan and where the employees suffered injuries for which the statute otherwise provided no adequate remedy. The district court conclud-

ed that 29 U.S.C. § 1132(a)(1)(B) provided an adequate remedy for Wilkins's grievance, which amounted to nothing more than a routine challenge of a denial of disability benefits.

**3.** In the present case, the district court determined that the employee benefit plan in question did not give the Plan Administrator discretionary power with respect to the interpretation of the Plan. The parties have not contested this finding. Accordingly, we review the Plan Administrator's denial of benefits *de novo*.

ports denial of [the] claim." A review of the medical evidence in Wilkins's case indicates that LINA and the district court were correct in denying Wilkins's claim.

The Plan provided in relevant part:

An employee will be considered Disabled if because of injury or sickness:

1. he is unable to perform all the material duties of his regular occupation; and after Monthly Benefits have been payable for 24 months, he is unable to perform all the material duties of any occupation for which he is or may reasonably become qualified based on his education, training or experience.

Essentially, the Plan required Wilkins to show that he was no longer able to perform the duties of his job because of his injury or illness.

Wilkins claimed that he was disabled because of a "rotator tear" and severe pain in his shoulder. Various physicians examined Wilkins prior to the denials of his claim. Dr. Corbett identified a possible rotator cuff tear as the source of Wilkins's pain. However, subsequent x-rays and an arthrogram indicated no such injury. An MRI and myelogram were also negative. Dr. Russell's examination indicated no tenderness of the rotator cuff and "no deficit with respect to rotator cuff function." Moreover, in a September 1993 letter, Dr. Corbett stated, "[a]t present it is my opinion that [Wilkins] does not suffer from permanent limitations or disability. I trust he is back to work. I have not seen him in three months." Subsequent letters from Dr. Corbett indicated that Wilkins's "subjective complaints of pain" and "pathology in [Wilkins's] shoulder" prevented him from lifting one hundred pound weights at work "during the course of his condition." However, Dr. Corbett did not provide any objective evidence for his findings.

Dr. Caborn's physical examination of Wilkins in January 1994 revealed a full range of motion in Wilkins's right shoulder, with some tenderness. Dr. Caborn also reviewed x-rays of Wilkins's shoulder, finding them "essentially unremarkable." Dr. Caborn assessed Wilkins as suffering from "right shoulder biceps tendon rupture with possible slap lesion," and recommended that Wilkins undergo an MRI. In the MRI report, dated February 11, 1994, Dr. Vanarthos stated that the MRI led him to suspect that Wilkins suffered from a partial tendon tear. Dr. Caborn reviewed the MRI, and noted some possible displacement of the tendon. He recommended further diagnostic tests, but Wilkins stated that he could not afford to pay for them. Dr. Combs also examined Wilkins in March of 1994, finding decreased range of motion in Wilkins's right shoulder and decreased grip strength in the right hand. His impression was that Wilkins suffered from a rotator cuff tear, and he agreed with Dr. Corbett's suggested treatment of the injury.

On February 3, 1995, LINA submitted all Wilkins's medical records, including those generated after the initial denial of his claim, to Dr. Harkness for review. Dr. Harkness concluded that despite an adequate "work-up for the pain in [Wilkins's] right shoulder," no one had identified a definitive lesion. Dr. Harkness determined that the medical records indicated no rotator cuff tear, no evidence of a lesion, and no positive diagnosis of any pathology in Wilkins's right shoulder.

Based on all the information contained in the record, the district court found that "there has never been a finding of an objective basis for [Wilkins's] complaints of pain." We agree. No doctor who has examined Wilkins has determined that he is disabled or unable to return to work indefinitely. Moreover, no objective tests have demonstrated that Wilkins is disabled. Although Wilkins insists that the Vanarthos MRI provides objective evidence that his condition is disabling, no doctor has interpreted the MRI to support such a conclusion. Dr. Caborn recommended further diagnostic examinations, the results of which never became part of the administrative record, if they were conducted at all. Therefore, we conclude that the medical evidence does not support a finding that there exists a genuine issue of material fact regarding whether Wilkins is disabled; accordingly, we affirm LINA's denial of benefits and the judgment of the district court.

## C. Additional Evidence

Wilkins asserts that the district court erred in failing to consider an affidavit of Dr.

Vanarthos, describing his impressions of the February 11, 1994 MRI. This argument is meritless. Although the district court reviewed the decision of the Plan Administrator *de novo,* the district court was confined to the record that was before the Plan Administrator. *See Perry v. Simplicity Engineering,* 900 F.2d 963, 966 (6th Cir.1990); *see also Rowan,* 119 F.3d at 437. LINA made its final decision denying Wilkins's claim for benefits on May 4, 1995. The Vanarthos affidavit is dated June 20, 1995. Therefore, the affidavit was not included in the record upon which LINA based its decision; accordingly, it also was not part of the district court's consideration of Wilkins's claim. We thus conclude that the district court did not err in excluding from its review of Wilkins's claim evidence that was not part of the administrative record.

### D. Compensatory Damages

■ Wilkins contends that he is entitled to compensatory damages, pursuant to 29 U.S.C. § 1132(a)(3), based on a claim of breach of fiduciary duty. Specifically, Wilkins claims that LINA breached its fiduciary duty to act solely in Wilkins's interest "for the exclusive purpose of providing benefits to him." As a result of this alleged breach, Wilkins argues that he should be awarded compensatory damages. He again cites *Varity,* 516 U.S. at 489, 116 S.Ct. 1065, to support the proposition that 29 U.S.C. § 1132(a)(3) authorizes a cause of action for breach of fiduciary duty in ERISA cases.

The district court correctly distinguished *Varity* from this case. In *Varity,* the Supreme Court held that ERISA § 502(a)(3), a "catchall provision" identical to 29 U.S.C. § 1132(a)(3), authorizes lawsuits for individualized equitable relief for breach of fiduciary duty and other injuries "by violations that [§ 1132] does not elsewhere adequately remedy." 516 U.S. at 512, 116 S.Ct. 1065.

29 U.S.C. § 1132 provides in relevant part:

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary

. . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan

. . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan. . . .

29 U.S.C. § 1132. The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies. *Varity,* 516 U.S. at 512, 116 S.Ct. 1065. Because § 1132(a)(1)(B) provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3). Wilkins availed himself of the remedy available to him under the statute. The district court reviewed his claim *de novo* and concluded that LINA's denial of benefits was correct. Wilkins therefore has no cause of action under any other subsection of § 1132. *See Varity,* 516 U.S. at 515, 116 S.Ct. 1065. Consequently, he cannot recover compensatory damages for an alleged breach of fiduciary duty.

Moreover, the facts in *Varity* are easily distinguishable from those of Wilkins's case. The employer-insurer in *Varity* breached its fiduciary duty to the plan's beneficiaries by "significantly and deliberately" misleading them, causing them to lose their non-pension benefits. *Varity,* 516 U.S. at 491–95, 116 S.Ct. 1065. In this case, LINA and Baptist Healthcare hardly deceived or misled Wilkins. To the contrary, LINA reviewed Wilkins's claim twice, allowing him to submit additional medical records well after the time for appeal of the original denial had expired. Further, the district court reviewed Wilkins's claim *de novo* twice, once in response to the defendants' motion for summary judgment,

and once in response to Wilkins's motion to alter and amend. In light of this comprehensive procedure, Wilkins's contention that he was not afforded a full and fair review of the denial decision is clearly meritless.

To rule in Wilkins's favor would allow him and other ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected. *Varity,* 116 S.Ct. at 1079. Therefore, we conclude that LINA reviewed Wilkins's claim fully and fairly, pursuant to § 1132(a)(1)(B), and consequently, Wilkins has no cause of action for a breach of fiduciary duty under § 1132(a)(3).

### E. Jury Trial

◼ Wilkins asserts that the district court erred because it refused to grant him a jury trial, in violation of the Seventh Amendment of the United States Constitution. Wilkins acknowledges that this court does not allow jury trials for appeals from ERISA claim denials. He contends, however, that he is entitled to a trial by jury because his is a case for money damages. Because Wilkins has no cause of action for which money damages are a recognized remedy, we view his appeal as one from the denial of benefits and conclude that the district court properly denied his motion for a jury trial. *See Bair v. General Motors Corp.,* 895 F.2d 1094, 1096 (6th Cir.1990) (holding that an ERISA claim is equitable in nature and therefore is not eligible for a jury trial); *Crews v. Central States, Southeast and Southwest Areas Pension Fund,* 788 F.2d 332 (6th Cir.1986).

### F. Summary Judgment in ERISA cases

Finally, Wilkins contests the district court's disposition of this case by its grant of the defendants' motion for summary judgment. Wilkins contends that it was improper for the district court to decide this case on summary judgment; he suggests that instead, the court should have resolved the case in a trial-like proceeding, giving the parties an opportunity to explain the medical evidence contained in the record. The parties ask us to clarify whether summary judgment is an appropriate means by which to dispose of a claim involving the denial of ERISA benefits.

The standards of review for determining ERISA denial-of-benefits claims are well-established. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948; *see also Rowan,* 119 F.3d at 435. In cases in which a plan administrator is given no discretionary authority by the plan, review of the plan administrator's decision by the district court—as well as the court of appeals—is *de novo,* with respect to both the plan administrator's interpretation of the plan and the plan administrator's factual findings. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948; *Rowan,* 119 F.3d at 435.[4] When conducting a *de novo* review, the district court must take a "fresh look" at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator. *See Perry* 900 F.2d at 966; *see also Rowan,* 119 F.3d at 437.

In this case, we agree that the district court properly reviewed *de novo* the medical evidence before the Plan Administrator. The district court reviewed Wilkins's claim pursuant to the defendants' motion for summary judgment and reviewed the claim *de novo* according to the appropriate standard. *See Rowan,* 119 F.3d at 435. The district court considered the administrative record and found "an absence of objective evidence supporting [Wilkins's] claim of disability." Upon our *de novo* review, we reach the same conclusion. Wilkins presented no evidence, either to the Plan Administrator or the district court, supporting his claim that he was

---

4. This standard differs from the arbitrary and capricious standard of review that is used when a benefits plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948. Prior to the *Firestone* decision, a vast majority of courts reviewed ERISA claims under the deferential arbitrary and capricious standard of review, permitting claims to be resolved "without extensive inquiry into the merits of the dispute and by the liberal use of procedural devices such as summary judgment." James L. Nolan, *Defending the Insurance Company Against Claims for Wrongful Denial in Administration of Employee Benefits Plans,* C887 ALI–ABA 193, 223 (1994).

disabled within the meaning of the Plan. The district court afforded Wilkins a full and fair *de novo* review of his claim, as did this court. *See Guilday v. United States Dep't of Justice*, 385 F.Supp. 1096, 1099 (D.Del.1974) ("What is critical is the kind of scrutiny the court applies to the administrative record, not the existence, in the abstract, of a right to a trial *de novo*.").

Because we agree that the district court correctly affirmed LINA's denial of benefits after reviewing Wilkins's claim according to the appropriate standard, I see no reason to address whether summary judgment is an appropriate way in which to dispose of ERISA cases generally, a question that cannot affect the rights of the litigants in this case.[5] *See Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) ("[A] federal court's] judgments must resolve a real and substantial controversy ... through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") (quotation omitted). Therefore, I cannot join my colleagues' attempt to devise a procedure which has no bearing on the resolution of this case and has neither been mandated by Congress nor recognized by any other court. *See Hudson v. United States*, —— U.S. ——, ——, 118 S.Ct. 488, 499, 139 L.Ed.2d 450 (1997) (Stevens, J., concurring in the judgment and stating that "a desire to reshape the law does not provide a legitimate basis for issuing ... an ... opinion that, at best, will have the precedential value of pure dictum"); *see also Mistretta v. United States*, 488 U.S. 361, 385, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (recognizing that federal courts properly refuse to resolve disputes which are not justiciable in order to avoid "encroaching into areas reserved for the other Branches" of government).

Although my colleagues insist that their "suggested guidelines" are "simply a restatement and application of principles previously espoused by this court and by the Supreme Court," they neglect to identify the established procedure under which their approach fits. I agree that the suggested guidelines restate the well-established standard and scope of review applicable to ERISA denial-of-benefits claims. However, I disagree that the standard and scope of review set forth the *procedure* by which to dispose of claims such as this one.[6] Moreover, in light of my colleagues' statement that they concur in the district court's judgment, "notwithstanding the label attached to the disposition of the action," I wonder what label they propose *should* attach to a disposition that in their view is appropriate. Although my colleagues are certain that neither Rule 52 nor Rule 56 applies, their suggested guidelines do *not* set forth the appropriate recognized procedural device applicable to these claims. Because my colleagues' unprecedented approach is unnecessary to the resolution of this case, I decline to join this portion of the opinion.

### III.

For the foregoing reasons, we **AFFIRM** the judgments of the district court.

GILMAN, Circuit Judge, concurring.

Judge Ryan and I fully concur in the result reached by Judge Cole and in all of the reasoning expressed in his opinion, except for that portion of the opinion under Part II.F. (Summary Judgment in ERISA cases).

There appears to be great confusion among the district courts as to the proper method of adjudicating proceedings brought under 29 U.S.C. § 1132(a)(1)(B) ("ERISA actions"). Some district courts conduct a bench trial on the merits of an ERISA action under Fed.R.Civ.P. 52, while others utilize the summary judgment procedures set forth in Fed.R.Civ.P. 56. We believe that both approaches are inconsistent with the appropriate standard of review set forth by this

---

**5.** My colleagues' disapproval of the general applicability of summary judgment to ERISA cases is particularly perplexing given their agreement to affirm, pursuant to the defendant's motion for summary judgment, the disposition of this case.

**6.** Ironically, in *Perry*, the case which forms the basis for much of the "suggested guidelines," this court affirmed the plan administrator's denial of benefits by granting the defendant's motion for summary judgment, reasoning that "no other result was possible." *See Perry*, 900 F.2d at 967.

court in *Perry v. Simplicity Engineering,* 900 F.2d 963 (6th Cir.1990), which is as follows:

> [T]he district court will review the administrator's decision *de novo,* that is without deference to the decision or any presumption of correctness, based on the record before the administrator. Thus, [*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) ] does not require district courts to hear and consider evidence not presented to the plan administrator in connection with a claim. This view is consistent with the proper judicial role in ERISA cases and precedent.

*Id.* at 966. This standard of review does not neatly fit under either Rule 52 or Rule 56, but is a specially fashioned rule designed to carry out Congress's intent under ERISA.

The confusion referred to above is evident in the case before us. Although styling its dispositive motion as one seeking "summary judgment," LINA acknowledged in its brief filed with the district court that the motion "differs from most summary judgment motions," and submitted that the district court's review of the merits of Wilkins's action was limited to the evidence presented to LINA at the time LINA's denial of benefits became final. The district court then proceeded with its analysis without referring to Fed.R.Civ.P. 56 or determining whether there was a genuine issue as to any material fact. Nevertheless, the district court entered a judgment that is captioned **"SUMMARY JUDGMENT."**

## A. The Problem with the Bench Trial Standard

■ When an ERISA plan does not clothe its administrator with discretionary authority to determine eligibility for benefits or to interpret the terms of the plan, the administrator's denial of benefits is reviewed *de novo* by a district court regarding both the administrator's interpretation of the plan's terms and its factual findings. *Bruch,* 489 U.S. at 115, 109 S.Ct. 948; *Rowan v. Unum Life Ins. Co.,* 119 F.3d 433, 435 (6th Cir.1997). In conducting its *de novo* review, a district court may only consider evidence that was first presented to the administrator. *Rowan,* 119 F.3d at 437; *Perry,* 900 F.2d at 966. *Perry* articulated the following policy rationale in support of so constraining a district court's review:

> A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal. If district courts heard evidence not presented to plan administrators, employees and their beneficiaries would receive less protection than Congress intended.

900 F.2d at 967 (citations omitted).

In light of these precedents, we are satisfied that a district court should not adjudicate an ERISA action as if it were conducting a standard bench trial under Rule 52. Such a proceeding would inevitably lead to the introduction of testimonial and/or other evidence that the administrator had no opportunity to consider. A district court's evaluation of such evidence would contravene *Perry*'s mandate confining the district court's *de novo* review to the evidence contained in the administrative record. Moreover, the disposition of an ERISA action in a standard bench trial is inconsistent with ERISA's goal of providing an inexpensive and expeditious method of resolving benefits disputes. *See Perry,* 900 F.2d at 967.

The only exception to the above principle of not receiving new evidence at the district court level arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. *See, e.g., VanderKlok v. Provident Life and Accident Ins. Co., Inc.,* 956 F.2d 610, 617 (6th Cir.1992) (insured permitted to present new evidence because the administrator failed to provide insured with proper notice as required by the administrative hearing procedures).

## B. The Problem with the Summary Judgment Standard

▮ A discussion of the summary-judgment procedure necessarily begins with the language of Rule 56, which provides in relevant part as follows:

**Rule 56. Summary Judgment**

. . . .

**(c) Motion and Proceedings Thereon.** . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law.

(emphasis added). As articulated by the United States Supreme Court, the function of a district court at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A district court accomplishes this task by determining whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

The preceding analysis illustrates precisely why the concept of summary judgment is inapposite to the adjudication of an ERISA action. Because this court's precedents preclude an ERISA action from being heard by the district court as a regular bench trial, it makes little sense to deal with such an action by engaging a procedure designed solely to determine "whether there is a genuine issue for trial." *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

We suspect that the summary-judgment mode of analysis has been uncritically utilized time and again because district courts tend to concur with the ruling of the administrator in an ERISA action. In such a case, no harm is done by entering summary judgment in favor of the administrator. *See, e.g., Perry*, 900 F.2d at 967 (affirming the district court's grant of summary judgment in favor

of the administrator on the ground that "no other result was possible, even if the *de novo* standard had been utilized."). If, on the other hand, a district court rejects the ruling of the administrator, the district court would then have to independently weigh the evidence in the administrative record and render *de novo* factual determinations. *See Rowan*, 119 F.3d at 437. There thus appears to be no benefit in having the district court first filter the administrator's ruling through a summary-judgment strainer.

In sum, the logic of Rule 56 does not comport with the *Perry* and *Rowan* standard of review. Rule 56 is designed to screen out cases not needing a full factual hearing. To apply Rule 56 *after* a full factual hearing has already occurred before an ERISA administrator is therefore pointless.

## C. Suggested Guidelines

▮ In light of the *Perry* standard quoted above, a district court should employ the following steps in adjudicating an ERISA action:

1. As to the merits of the action, the district court should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

3. For the reasons set forth above, the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.

**D. Disposition of the Instant Case**

In the present matter, the district court erroneously labeled its ruling in favor of the defendants as one for summary judgment. Nevertheless, the district court properly adjudicated Wilkins's action by conducting a *de novo* review of LINA's decision based solely upon the administrative record, and found no objective evidence supporting Wilkins's claim of disability. We agree with the district court's determination and therefore concur in affirming the entry of judgment in favor of LINA, notwithstanding the label attached to the disposition of the action.

While Judge Cole characterizes our suggested guidelines as having no bearing on the resolution of the case at bar, he acknowledges Wilkins's argument that summary judgment is not appropriate for deciding an ERISA action because such an action should generally be decided in a proceeding resembling a bench trial. Rather than ignore Wilkins's argument, we have applied well-settled precedent to conclude that a district court should employ neither summary judgment nor a bench trial in deciding ERISA actions. In so doing, we have recognized that both methods of disposition have been uncritically but erroneously utilized.

Moreover, Judge Cole claims that we are devising a procedure that "has neither been mandated by Congress nor recognized by any other court." To the contrary, the suggested guidelines enumerated above are simply a restatement and application of principles previously espoused by this court and by the Supreme Court. Indeed, our conclusion that ERISA actions ought not be decided in bench trials (thus rendering summary judgment inapposite) is perfectly consistent with Congress's goal in enacting ERISA, i.e., to provide workers and beneficiaries with an inexpensive and expeditious method of resolving benefits disputes. *See Perry*, 900 F.2d at 967.