**J. Bruce BEELER, Plaintiff,**

v.

**The WESTERN SOUTHERN LIFE INSURANCE COMPANY, Defendant.**

No. C–3–01–237.

United States District Court,
S.D. Ohio,
Western Division.

Nov. 7, 2002.

Jeffrey Michael Silverstein, Jeffrey M. Silverstein & Associates, Dayton, OH, for plaintiff.

George Edward Yund, Martha L. Boyd, Frost, Brown, Todd, LLC, Cincinnati, OH, for defendant.

## DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 10); JUDGMENT TO ENTER FOR DEFENDANT; TERMINATION ENTRY

RICE, Chief Judge.

The Plaintiff in this case is J. Bruce Beeler; the Defendant is The Western Southern Life Insurance Company ("Western"). This is a discrimination lawsuit, the material facts of which are simple, straightforward, and not in dispute.[1] Beeler was employed by Western, and participated in its health, disability, and pension benefits plan ("Beneflex plan"). As it existed at the time he began his employment, the Beneflex plan provided employees up to 26 weeks of short-term disability benefits. Thereafter, upon proof of an inability to perform in any occupation, employees were entitled to long-term disability benefits. Such benefits were available up to the age of 65. Furthermore, these individuals continued to be designated by the company as employees, which meant that they continued to accrue years of employment for purposes of future pension benefits, regardless of how long they remained away from the workplace. No distinction was made between physical and mental disabilities. Under the terms of the Beneflex plan, Western retained the right at all times to change the terms thereof.

Effective January 1, 1999, Western ceased defining "employee" to include inactive individuals receiving long-term disability benefits. The effect of this change was that such individuals would no longer accrue years of employment toward pension benefits. At the same time, Western also cut back on the amount of long-term disability benefits it would pay for most mental and nervous disabilities, restricting coverage to 24 months.

Regarding Beeler, in October, 1994, he submitted a claim to Western for short-term disability benefits, on the basis that he suffered from a panic disorder. The

---

1. Western attached several documents in support of its Motion for Summary Judgment (Doc. # 10), accompanied by excerpts of the deposition of J. Bruce Beeler (filed with the Court on June 4, 2002) and the affidavit of its Director of Benefits, Dean F. Vonderheide (Doc. # 10 at Appendix Ex. B). With the exception of several immaterial facts to which the Court need not make reference, Beeler does not dispute the facts as represented in Western's Motion. (*See* Memorandum Contra (Doc. # 14) at unnumbered p. 2.) Having reviewed the materials upon which Western relies, the Court is satisfied that its depiction of the facts, as set forth in its Motion (Doc. # 10 at 2–7), is fair and satisfactory, and can be used as the basis for the Court's own recounting of the facts herein.

claim was granted. In December, 1994, Beeler was diagnosed with depression and anxiety/panic disorder. He subsequently submitted a claim, and was approved for long-term disability benefits under the Beneflex plan, on account of his not being able to work in any occupation. Several years later, by letter dated November 6, 1998, Western notified Beeler of the changes to the Beneflex plan which it had then recently approved, and of how that would affect his future benefits. In particular, it informed him that his status as an employee and his long-term disability benefits would both be terminated after two years from the effective date of the approved changes, *viz.*, they would terminate after December 31, 2000.

In February, 1999, Beeler appealed the decision to terminate his employment status and discontinue his benefits, contending that he had an agreement with Western that he would be entitled to such at least until he retired at age 55, and noting that he would only be 50 years old as of December 31, 2000. By letter of March 19, 1999, Western informed Beeler that his appeal had been denied, pointing out that at all times it retained the right to amend or even to terminate the Beneflex plan. Subsequently, Beeler filed a complaint with the EEOC, and, after receiving a right to sue letter from that body, filed the herein Complaint.

In his Complaint (Doc. #1), Beeler states three claims for relief: 1) violation of the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); 2) violation of Chapter 4112 of the Ohio Revised Code; and 3) breach of expressed or implied contract under the law of Ohio.

Western now moves for summary judgment (*see* Doc. #10), arguing that no genuine issue of material fact exists, and that,

as a matter of law, it is entitled to judgment. More specifically, Western contends that Beeler does not qualify for relief under the ADA or Chapter 4112 of the Ohio Revised Code. It also contends that the claim for breach of contract is preempted by the Employee Retirement Income and Security Act, 29 U.S.C. § 1144(a) ("ERISA"). In the alternative, it argues that even if the breach of contract claim were treated as one arising under ERISA itself, pursuant to the complete preemption doctrine, *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); 29 U.S.C. § 1132(a)(1)(B), it would fail because its actions of redefining "employee," cutting back on Beneflex plan benefits, and ultimately terminating Beeler's long-term disability benefits as a result thereof, were not arbitrary and capricious.

For the reasons stated by Western, the Court shall sustain its Motion.

I. *Standards Governing Motions for Summary Judgment* [2]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the

---

**2.** For purposes of ruling on the Defendant's Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Plaintiff, who is the nonmoving party.

absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of

his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v.*

*Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## II. *Analysis*

Two separate actions undertaken by Western are at issue: 1) its changing the definition of "employee" to exclude *any* individual receiving long-term disability benefits, a change which had the practical effect of curtailing the number of years such an individual could accrue toward his or her Beneflex plan pension benefits; and 2) its amending the Beneflex plan structure to limit long-term disability benefits for an individual receiving such on the basis of "any mental, nervous or psychiatric condition, except irreversible psychosis or irreversible dementia," to 24 months.

Beeler complains that these actions were both discriminatory and in breach of an express or implied contract. The Court will first address his Third Claim for Relief, for breach of express or implied contract.

■■■ To begin with, it is evident on its face and from the pleadings that the Beneflex plan at issue was an ERISA welfare plan.[3] (*See* Vonderheide Aff. at Ex. 1 (1995 Beneflex plan documents), Ex. 2 (1998 Beneflex plan documents) & Ex. 3 (1999 Beneflex plan documents).)[4] Thus, the Court must first consider whether Beeler's Third Claim for Relief is preempted by ERISA. 29 U.S.C. § 1144(a) states, in part:

> Except as provided in subsection (b) of this section, the provisions of this subchapter ... shall supercede any and all State laws insofar as they now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title

\* \* \* \* \* \*

This provision has been construed broadly to preempt causes of action brought under state law which would, if not preempted,

---

[3] ERISA is a comprehensive federal law governing employee benefits. *See Thompson v. American Home Assurance Co.,* 95 F.3d 429, 434 (6th Cir.1996). 29 U.S.C. § 1002(1) states:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... benefits in the event of sickness ... [and] ... death....

Plans providing for long-term disability care are ERISA welfare plans. *See Sprague v. Gen-*

*eral Motors Corp.,* 133 F.3d 388, 400 (6th Cir.) (*en banc*), *cert. denied,* 524 U.S. 923, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998).

[4] Although the change to the definition of "employee" affected future pension benefits, this aspect of Western's policy change was not a change to the pension plan itself. This is important, as pension plan benefits, in contrast to most welfare plan benefits, are usually treated as vested benefits under ERISA. *See* 29 U.S.C. §§ 1002(2) & 1051–1061; *Sprague, supra.* The key observation on this particular point is that Western did not refuse to pay any vested pension benefits; it merely redefined "employee" so as to limit, on the front end, the extent to which an individual could become vested in the first place.

compromise Congress' intent to make welfare and pension plan regulation the exclusive concern of the federal government. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 552 (6th Cir.1987). State laws, which include decisional laws of the state courts, *see* 29 U.S.C. § 1144(c)(1), "relate to" an ERISA plan if they have a "connection with or reference to" said plan. *Tinsley v. General Motors Corp.*, 227 F.3d 700, 703 (6th Cir.2000); *Neusser, supra.*

Beeler's claim for breach of contract stems from his belief that Western had established "a precedent of grandfathering the current employees, not affecting them." (Beeler Depo. at 15.) In other words, his complaint is that Western had an established history of not imposing any changes to its benefits structure upon its existing employees, that this precedent was established as a matter of contract, and that it breached said contract when it terminated his employment status and long-term disability benefits. He noted at his deposition that at the time he started working for Western, it prided itself on providing benefits to disabled employees until they could return to work or until normal retirement age. (*Id.* at 19.) He added: "This was the first time in the 20–some years when I worked for the company that they actually made a dramatic change like they did that affected the current employees." (*Id.* at 15.) In the alternative, though not stated as a separate claim for relief in his Complaint, Beeler adds in his Memorandum Contra that Western should be estopped from amending the Beneflex plan with respect to him. (Doc. # 14 at unnumbered p. 2.) Be that as it may, Beeler acknowledges that aside from the plan documents, he had no other written agreement with Western regarding benefits. (Beeler Depo. at 15–16.) In his Memorandum Contra, he submits that

Western's "precedent" of excluding existing employees from plan changes, and its "oral representations made to Plaintiff" that he would be entitled to benefits until the normal age of retirement, "established a factual basis for a contractual obligation to pay disability through the normal retirement date." (Doc. # 14 at unnumbered pp. 2 & 3.)

■ The Sixth Circuit has articulated a three-part test for determining whether a state law claim is one which "relates to" an ERISA plan. *See Neusser*, 810 F.2d at 555–56. *First*, the Court must determine whether the state law represents a traditional exercise of state authority. *See id.* at 555. *Second*, it must determine whether the law affects relations between principal ERISA entities. *See id.* at 556. *Third*, it must determine the effect that the law, if it is upheld and the claim thereunder found viable, will have on the Plan. *See id.*

■ Beeler, as a plan beneficiary, and Western, as the plan administrator, are both principal ERISA entities. Moreover, ERISA would be rendered a nullity if plaintiffs could couch their ERISA-plan-based grievances as common law breach of contract claims. It is therefore clear that this claim relates to the Beneflex plan. Although the common law of contracts is traditionally a subject matter for the state courts, the particular contract at issue (i.e., the Beneflex plan) is governed by the rules of ERISA, which is exclusively a federal concern. Nevertheless, before the breach of contract claim can be dismissed as preempted, the Court must consider whether it can be restated as an ERISA claim itself. *See Metropolitan Life, supra.* 29 U.S.C. § 1132(a) provides the entire universe of civil actions which may be brought under ERISA, one of which includes the right of an ERISA plan beneficiary, such as Beeler, to enforce his rights

under the terms of the plan at issue. In *Metropolitan Life,* the Supreme Court held that a claim which could be raised under § 1132(a), but which is actually stated in the complaint as a claim arising under state law, is completely preempted by ERISA, such that it necessarily states a federal claim. 481 U.S. at 66–67, 107 S.Ct. 1542. Whereas traditional preemption operates as a defense, which, if well taken, results in the dismissal of a conflicting state law claim, *see Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), the "complete preemption doctrine," as it has come to be known, does not terminate a claim, but merely forces the Plaintiff to proceed subject to the rules of ERISA. *See, e.g., Nester v. Allegiance Healthcare Corp.,* 162 F.Supp.2d 901, 905 (S.D.Ohio 2001).

Herein, it is evident that Beeler is seeking nothing more than the enforcement of his rights under the original terms of the Beneflex plan. His Third Claim for Relief is, therefore, properly construed as an ERISA claim, *see* 29 U.S.C. § 1132(a)(1)(B), and will be treated as such by this Court.

 That Beeler may proceed under ERISA is of little help to his case, as it is apparent that he is not entitled to enforce the original terms of the Beneflex plan. "Employers are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Sprague v. General Motors Corp.,* 133 F.3d 388, 400 (6th Cir.) (*en banc*) (citing *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995)), *cert. denied,* 524 U.S. 923, 118 S.Ct. 2312, 141 L.Ed.2d 170 (1998). "Because vesting of welfare plan benefits is not required by law, an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest 'must be found in the plan documents and must be stated in clear and express language.' "

*Id.* (quoting *Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 937 (5th Cir.), *cert. denied,* 510 U.S. 870, 114 S.Ct. 196, 126 L.Ed.2d 154 (1993)). Employees generally have no vested rights in welfare benefits, and to demonstrate that they do, they must show that their employer has bargained away its right to modify or terminate them. *See Nester,* 162 F.Supp.2d at 908.

The relevant Beneflex plan documents all indicate that Western, at all relevant times, retained the right to modify the terms of said plan. (Vonderheide Aff. at Ex. 1, at Bates-stamped docs. WSB 001294 & 001449; *id.* at Ex. 2, at Bates-stamped docs. WSB 000439 & 000584; *id.* at Ex. 3, at Bates-stamped docs. WSB 000734 & 000787.) Whatever merit there may be to Beeler's claims that Western had a history of not imposing plan changes upon its existing employees, that fact cannot be interpreted as an implied contractual duty, or invoked to estop Western from acting differently in new situations, such as the one giving rise to the case at bar, and whatever "oral representations" Beeler might have relied upon at the time he accepted employment at Western, such cannot displace the terms of the written ERISA plan documents. *See Sprague,* 133 F.3d at 402–03 (holding that no right can exist under an ERISA plan unless it is set forth in a writing). In *Sprague,* the Sixth Circuit noted that to "sanction informal 'plans' or 'plan amendments'—whether oral or written—would leave the law in a state of uncertainty and would create disincentives for employers to offer benefits in the first place." *Id.* at 403.

For the reasons set forth in *Sprague,* the Court agrees with Western that Beeler had no vested right to a continuation of his "employee" classification or long-term disability benefits. Accordingly, as to Beeler's Third Claim for Relief, nominally for

breach of contract, but construed herein as one to enforce rights under the original terms of the Beneflex plan, there being no genuine issue of material fact, Western's Motion for Summary Judgment is SUSTAINED.[5]

■ The question which then arises under Beeler's First and Second Claims for Relief, both of which hinge on a finding of disability-based discrimination, is whether it can be said that irrespective of Western's right to amend the Beneflex plan language under ERISA, any evidence exists that it did so in violation of the ADA or Chapter 4112 of the Ohio Revised Code.

The question is readily answered: "no." Only "qualified individual[s] with a disability" can maintain actions under the ADA and its Ohio counterpart. *See* 42 U.S.C. § 12112(a); *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1180 (6th Cir. 1996); Ohio Admin. Code § 4112–5 02(K); *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St.3d 279, 496 N.E.2d 478, 480 (Ohio 1986). Western does not dispute that Beeler is disabled. *See id.* § 12102(2)(a) (including

in the definition of "disability" a "mental impairment that substantially limits" a major life activity); *see also* Ohio Rev.Code § 4112.01(A)(13). The shortcoming to his claim, as Western points out in its Motion, but which Beeler fails to address in his Memorandum Contra, is that he is not a "qualified individual" under the ADA, and thus not protected by the law he invokes:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8); *see also* Ohio Admin. Code § 4112–5–02(K). Beeler does not dispute that he was, at all relevant times, totally disabled, and unable to perform the job which he last held in October, 1994, without or without reasonable accommodation. (Beeler Depo. at 8–10.) In fact, he does not dispute that he has been unable to perform *any* occupation during this time. (*Id.*) Indeed, his grievance with

**5.** As an additional point, Western argues that Beeler's breach of contract claim must fail pursuant to *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir.1998). In *Wilkins*, the Sixth Circuit reiterated that where an ERISA beneficiary sues for the recovery of benefits, the district court must limit its review to the administrative record, conducting that review pursuant to an arbitrary and capricious standard if there is clear indication on the face of the plan that discretionary authority to determine eligibility for benefits was given to the administrator. 150 F.3d at 617–19; *accord Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court does not find *Wilkins*, which also instructs that motions for summary judgment are not the appropriate vehicle for deciding such claims, applicable. While one might not always be able to draw a distinction between a claim to "recover benefits due to him under the terms of his plan" and a claim to "enforce his rights under the terms of the plan," enumerated as

separate actions under 29 U.S.C. § 1132(a)(1)(B), the distinction exists in this case. There is no claim that Western denied Beeler any benefits due him under the original terms of the Beneflex plan; nor is there any claim that Western *improperly* denied him benefits *under the terms* of the amended plan. Simply put, there is no administrative record to review. While Beeler clearly seeks damages resulting from what he terms a "breach" of the ERISA plan, the principal argument he makes is not that Western denied him benefits in contravention of any ERISA plan terminology, but that it should not have been allowed to change that terminology in the first instance. The Court construes this, then, as a claim to enforce his rights pursuant to the terms of the Beneflex plan as originally conceived, and not one to recover benefits wrongly denied him. Accordingly, *Wilkins* is inapplicable, and summary judgment is an appropriate vehicle for deciding the merits of the case. *See Sprague, supra.*

Western is based entirely on his disappointment in its terminating his long-term disability benefits, benefits which were only ever available upon a showing that he was unable to return to *any* gainful employment. Because he is unable to work, he cannot invoke the ADA for protection.

In fairness to Western, it also bears noting for the record that Beeler has not adduced any evidence of discrimination, be it direct or indirect. In opposing Western's Motion for Summary Judgment, Beeler relies exclusively on the letter it sent to him on November 6, 1998, informing him of the changes it was implementing. (Doc. # 14 at unnumbered pp. 1–2.) The letter bears no indicia of discrimination.

With respect to its decision to cease defining individuals receiving long-term disability benefits as employees, Western stated that its goal was to cut costs and "align [its] practice with that of most major corporations." (Vonderheide Aff. at Bates-stamped doc. WSB000201.) This decision may evince a retreat of employer altruism, but it is no more discriminatory than all other purported cost-saving measures American corporations take everyday. Moreover, it bears no direct relation to mental disabilities in particular. As for its decision to amend its Beneflex plan with respect to long-term disability benefits for "any mental, nervous or psychiatric condition, except irreversible psychosis or irreversible dementia," it offered no excuse for said decision, stating only that it was doing so. (*Id.*) Again, this is merely an example of a business decision on the part of the company. While no doubt unfortunate to all of the individuals whom it affected, Beeler included, short of a contract between it and its employees to act otherwise, nothing in the law prohibited Western from taking such an action. As discussed above, it is clear that no such contract guaranteed that the disability benefits to which Beeler had grown accustomed would be offered until his normal age of retirement.

With regard to the latter decision, effecting such an across-the-board policy change is not discriminatory. To be sure, across the spectrum of individuals receiving long-term disability benefits under the Beneflex plan, those with a "mental, nervous or psychiatric condition, except irreversible psychosis or irreversible dementia," were treated differently than those with physical disabilities, but nothing in the ADA prevents employers from drawing *sub-class* distinctions between those disabled by mental or nervous conditions and those disabled by physical conditions. *See Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1015–19 (6th Cir.1997) (*en banc*), *cert. denied*, 522 U.S. 1084, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998). Because the same changes that affected Beeler had the potential to affect all employees, it cannot be stated that it was directed at Beeler *because of his own disability*. *See id.* at 1015–16.

For the reasons and citations to authority stated above, with respect to Beeler's First and Second Claims for Relief, arising under the ADA and Chapter 4112 of the Ohio Revised Code, respectively, there being no genuine issues of material fact, Western's Motion for Summary Judgment is SUSTAINED.

### III. *Conclusion*

There being no genuine issues of material fact, Western's Motion for Summary Judgment (Doc. # 10) is SUSTAINED. Judgment is ordered entered in favor of the Defendant and against the Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the South-

ern District of Ohio, Western Division, at Dayton.