Donna CZARNOPYS, Plaintiff,

v.

**CRYSTAL FLASH LIMITED PART-
NERSHIP OF MICHIGAN, et
al., Defendant.**

**No. 1:02CV216.**

United States District Court,
W.D. Michigan,
Southern Division.

April 25, 2002.

Michael J. Roth, Stephen D. Turner, Law, Weathers & Richardson, P.C., Grand Rapids, MI, for plaintiff.

Clifford A. Knaggs, Knaggs, Harter, Brake & Schneider, P.C., Lansing, MI, Erin E. Gravelyn, Richard A. Glaser, Dick-

inson Wright PLLC, Grand Rapids, MI, for defendant.

## OPINION

ENSLEN, District Judge.

### INTRODUCTION

Plaintiff Donna Czarnopys has filed this emergency lawsuit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. The parties have agreed, at least as to Count One, that the lawsuit can be decided based on the Court's review of the administrative record and legal standards. Based on this review, the Court will enter Judgment in favor of Plaintiff. This Opinion is summary in character due to the importance of reaching a written decision this very day for the purpose of trying to save Plaintiff's life.

People in America wonder, at times, whether stories about health care plans denying health care to dying and desperately infirm patients are factual or are merely apocryphal anecdotes meant to curry political objectives. Let this case stand as notice, health care plans do deny coverage for life saving procedures with nary a care for the carnage left in their wake.

### ADMINISTRATIVE RECORD

Plaintiff is a 31–year–old non-smoker who was diagnosed in March 2001 with high-grade neuroendocrine carcinoma for which she received two cycles of chemotherapy. She was asymptomatic for a period until January 8, 2002 when it was diagnosed that her cancer had spread to a lung. Her treating physicians did not believe that further standard chemotherapy would be successful given the rapid recurrence. Therefore, on January 25, 2002, her physicians completed a pre-certification for approval for high dose chemotherapy and a bone marrow transplant (which would be necessitated by the effects of the high dose chemotherapy).

Plaintiff is covered under her spouse's employer's (Defendant Crystal Flash Partnership of Michigan's) health plan. The Plan covers organ and tissue transplants and chemotherapy. The Plan contains an exclusion for services which are not "medically necessary" or those which are "experimental." The procedures in this case are not listed as "experimental" procedures in the Plan. Defendant Cambridge Integrated Services, Inc. is the claims administrator under the Plan.

On February 14, 2002, Cambridge notified Plaintiff that the pre-certification request was approved. Plaintiff's bone marrow transplant was scheduled for March 11, 2002. In reliance on the notification, Plaintiff did not receive standard chemotherapy in preparation for the bone marrow transplant. In further reliance, Plaintiff's sister underwent testing and was determined to be a 100 percent match for the transplant. Plaintiff's white cell count also increased during this time period in part because of a lack of other treatment.

On March 7, 2002, Cambridge notified Plaintiff that it had reached a second decision based on "new information negat[ing] this earlier decision." (Administrative Record at 109.) It appears from the record that there was no *new medical information or studies arising during the intervening period,* but rather that Cambridge simply wished to adjust what it viewed as a mistaken decision. Dr. Kimberly Blackwell of Cambridge, who headed the physician panel that reported that payment should not be approved, concluded in the report that the services were "medically necessary." However, on the issue of whether the services were "experimental," her report said that while small cell carcinoma is remarkably "chemosensitive cancer," and while these procedures "support a superior response rate and

perhaps an improved survival rate," "the relapse rate was not differen[t] over standard dose chemotherapy" such that the procedures do not offer "an additional chance of cure." (A.R. at 66.) She concluded that these procedures were experimental and should not be performed outside a clinical trial. (*Id.*)

Dr. Blackwell's reading of the experimental limitation contradicted the Plan language. The Plan language never indicates that relapse rate is a decisive factor. Rather, the Plan language defines "experimental" based upon whether the treatment has "efficacy as compared with a standard means of treatment." There was no stated factual support in the report for any conclusion that these procedures had been clinically studied and determined not to be efficacious. The Report simply ignored the subject of medical studies.

Thereafter, Defendant's excess insurer, HCC Benefits Corporation, was contacted as to whether its excess insurance policy would provide coverage for the procedures. On or about March 25, 2002, HCC Benefits Corporation determined that coverage would be denied because the procedures were deemed "experimental." This determination clearly related to the excess policy language and not the Plan language. At about the same time, Plaintiff was informed by Cambridge that her administrative appeal of the denial was also denied.

### STANDARD OF REVIEW

■ As was articulated in the concurring opinions in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 618 (6th Cir.1998), which opinions stated the governing standard of review for that decision, the applicable standard of review is as follows:

"[T]he district court will review the administrator's decision de novo, that is without deference to the decision or any presumption of correctness, based on the record before the administrator.

Thus, [*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)] does not require district courts to hear and consider evidence not presented to the plan administrator in connection with a claim. This view is consistent with the proper judicial role in ERISA cases and precedent." *Wilkins*, 150 F.3d at 618 (quoting *Perry v. Simplicity Engineering*, 900 F.2d 963, 966 (6th Cir.1990)).

While the Court of Appeals' description of the legal standard is a "*de novo*" standard, much of the briefing here discusses whether the claims decision was "arbitrary and capricious," in reference to the *Firestone* decision and in reference to the Plan language which conveyed discretion to the administrator. The Court will assume for the purposes of argument that an "arbitrary and capricious" standard applies because, regardless of the standard, Plaintiff meets the standard.

### LEGAL ANALYSIS

■ While it is true, as noted in the cited case law, that a claims administrator who is given discretion to make decisions consistent with sound medical judgment should have those decisions honored in the absence of abuse of discretion, there is an ample record of abuse of discretion here. At the time of the first decision, Cambridge, the claims administrator, knew or should have known that the Plaintiff would be waiting on the transplant procedures scheduled for March 11 and was undertaking a course of treatment which delayed other treatment in favor of the transplant procedures. Despite this, the claims administrator approved the treatment and then on the eve of the March 11 procedures made a second decision denying treatment. This change in position has worked to the detriment of Plaintiff's health, as confirmed by her medical information and white cell count. Although in

most cases a "whoops, I slipped" response from a claims administrator is acceptable because there is no adverse affect on patient health in the interim, in this case, the delay has worked to the severe detriment of a critically-ill cancer patient. In such circumstances, the change in position, by itself, is arbitrary and capricious.

As for the second decision, which denied coverage, it too is lacking. The decision acknowledges that the procedures are medically necessary and will to some extent prolong Plaintiff's life. However, in light of unspecified recurrence data, the claims administrator deems the procedures "experimental." This is not in keeping with the Plan definition of "experimental" nor did the claim administrator rely on any specified clinical data to support these conclusions. Further, the conclusion was not based on any "new information," which was the proffered reason for reconsideration.

For all these reasons, the Court determines that the claims administrator's decision denying benefits was arbitrary and capricious and that Judgment should issue, immediately, declaring and ordering the payment immediately of the requested benefits. This determination makes unnecessary a determination of the remaining counts of the Complaint as well as Defendants' Motion to Dismiss those counts.

### RULE 8 MATTERS

■ Should it be that this Court's analysis of this human travesty has not dissuaded Defendants from pursuit of this suit on appeal, the Court will make an analysis of the factors pertinent under Rule 8 of the Rules of Appellate Procedure as to whether this Court's Judgment should be stayed pending appeal. The Court believes that the resounding answer is "no." Plaintiff has already been harmed by arbitrary treatment. Her life now hangs in the balance and the interests of Defendants simply cannot compete. Accordingly, the Court's Judgment shall also deny Defendants a stay of this Judgment and further direct that any appeal and/or motion for stay be filed with the Court of Appeals within 24 hours of this decision.

### CONCLUSION

For the reasons stated, Judgment shall issue in favor of Plaintiff on Count One. Relief on the other counts is denied as moot. Defendants' Motion to Dismiss the other counts is also denied as moot.

### JUDGMENT

In accordance with the Opinion of this date;

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Judgment on the Administrative Record (Dkt. No. 18) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court declares that the Plan documents in this case provide coverage for the medical procedures sought by Plaintiff in this suit (bone marrow transplant and high-dose chemotherapy) and that the decision of the claims administrator denying coverage was arbitrary and capricious.

**IT IS FURTHER ORDERED** that Judgment is entered in Plaintiff's favor and against Defendants as to Count One and Defendants are hereby ordered and enjoined to immediately (*i.e.*, without a delay of more than 24 hours) convey to Plaintiff's care providers that the requested services will be covered under the Plan language and that payment will be made immediately (*i.e.*, without a delay of more than 24 hours) upon the request of the care providers.

**IT IS FURTHER ORDERED** that Plaintiff may seek attorney fees under the procedures of Federal Rule of Civil Procedure 54 and may seek costs under the procedures of Local Civil Rule 54.1.

IT IS FURTHER ORDERED that, in light of resolution of Count One, the Court determines that Plaintiff's requests for relief as to the remaining counts are moot and, therefore, those counts are **DISMISSED** and Defendants' Motion to Dismiss said counts (Dkt. No. 14) is **DENIED** as moot.

IT IS FURTHER ORDERED that any request for stay pursuant to Rule 8 of the Rules of Appellate Procedure is **DENIED** and that Defendants are ordered to file any appeal and/or request for stay they wish to file within 24 hours of this Judgment.

IT IS FURTHER ORDERED that the Clerk shall call the parties' attorneys' offices and instruct them that this Judgment shall be e-filed and shall also inform them of the precise time that the Judgment was entered.