**Paul FRANCIS, et al., Plaintiffs,**

v.

**UNITED PARCEL SERVICE OF AMERICA, INC., et al., Defendants.**

No. C–3–01–235.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 11, 2003.

David Michael Duwel, Dayton, OH, for Plaintiffs.

Julie M. Tomlinson, Katherine Cook Morgan, Frost, Brown, Todd, LLC, Cincinnati, OH, Winston E. Miller, Frost, Brown & Todd, Louisville, KY, for Defendants.

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT (DOC. # 23) AND OVERRULING, IN PART ON THE MERITS AND IN PART WITHOUT PREJUDICE, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 21); PLAINTIFFS DIRECTED TO FILE AMENDED COMPLAINT WITHIN 20 DAYS FROM DATE

RICE, Chief Judge.

Plaintiff Paul Francis is a former employee of Defendant United Parcel Service, Inc. ("UPS"), designated in the Complaint (attached to Doc. # 1) as United Parcel Service of America, Inc. He brought the underlying action against UPS and his former supervisor, Defendant Brian J. Cusson, on the basis that he was wrongfully discharged. In doing so, he set forth several claims, all purportedly arising under the laws of the State of Ohio.[1] The Defendants removed this action from the Montgomery County Common Pleas Court (*see* Doc. # 1), on the basis that Count Three of the Complaint, for breach of contract, is completely preempted by the Employee Retirement and Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), such that this Court has jurisdiction to hear the case under 28 U.S.C. §§ 1331 & 1441. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). They now move for summary judgment. (*See* Doc. # 21.) In opposing summary judgment, Francis argues that his breach of contract claim does not arise under ERISA and is not preempted by ERISA. (Memo. in Opp. (Doc. # 23) at 17–20.) He also moves for leave to amend this claim (Count Three). (*Id.* at 20.)

I. *Factual Background*

For purposes of considering the Defendants' Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in the light most favorable to Francis, who is the non-moving party.

Francis began working for UPS in 1978. (Francis Depo. at 67.) In May of 2000, he took short-term disability ("STD") leave from his supervisory position at the company's Dayton facility, pursuant to a group benefits plan ("Group Plan") funded and sponsored by UPS, and administered by a third-party, CIGNA Integrated Care ("CIGNA"). (*Id.* at 293; Cusson Depo. at 14; Doc. # 23 at Ex. 20, at 106.) At the time he took leave, Francis had been identified by UPS management as an employee whose work performance was in need of improvement. (Cusson Depo. at 13–14.) The cause of his need for leave was depression (Doc. # 23 at Exs. 5 & 17), for which he was being treated by a psychiatrist, Martha E. Tymeson, M.D., and a psychologist, Paul D. Entner, Ph.D. (Fran-

---

1. His wife, Louise, is also joined as a Plaintiff, asserting a loss of consortium claim.

cis Depo. at 25–26.) At that time, Cusson was UPS's Human Resources Manager for the Kentucky District, which encompassed the Dayton facility. (Cusson Depo. at 4–5.)

On November 13, 2000, Francis was notified by CIGNA that it had determined that he was no longer disabled and that his STD benefits would be discontinued. (Doc. # 23 at Ex. 3.) The basis for its decision was its inability to obtain records from Dr. Tymeson to substantiate his disability claim. (*Id.*) On November 22, 2000, counsel for Francis wrote to CIGNA, requesting that it reconsider its decision, and take into account not only the records of treatment by Dr. Tymeson, but also those of Dr. Entner, before rendering a final decision. (*Id.* at Ex. 5.) Construing counsel's letter as an appeal, CIGNA proceeded to consider supplemental records submitted by both Dr. Tymeson and Dr. Entner. (*Id.* at Exs. 5, 8, 17 & 18.) Dr. Tymeson was of the opinion, as of November 14, 2000, that Francis could return to work immediately if limited to a part-time, daytime, non-managerial position, under a different supervisor than he had had at the time he began leave. (*Id.* at Ex. 17.) As of November 22, 2000, Dr. Entner expressed doubt as to Francis' ability to return to work, but by March 7, 2001, had indicated that he could possibly begin work by May 1, 2001. (*Id.* at Exs. 5 & 18.) CIGNA affirmed its decision to deny continued STD benefits on March 16, 2001, informing Francis that he could appeal the decision to UPS, per the terms set forth in the Group Plan Summary Plan Description ("SPD").[2] (*Id.* at Ex. 10.)

Notified by CIGNA that Francis' STD benefits had been discontinued, Cusson wrote to Francis on March 23, 2001, directing him to report to work on April 2, 2001, or face termination. (Doc. # 23 at Ex. 11.) Cusson did not address Francis' right to appeal CIGNA's decision. Cusson also did not specify a time or place for Francis to report to work, even though the position he had occupied prior to his taking leave, the previous May, had been assumed by someone else. (*Id.*; Cusson Depo. at 41–47.) Furthermore, Jeff Funk, the manager of the Dayton facility, had not been informed by higher management to arrange any particular job for Francis or even to expect his return to work. (Funk Depo. at 10–11, 17.)

On March 27, 2001, counsel for Francis wrote to Cusson, notifying him that Dr. Entner was not in agreement with Dr. Tymeson regarding Francis' ability to return to work by April 2. (Doc. # 23 at Ex. 12.) He stated that Dr. Entner did not think that Francis should return to work until May 1, 2001, at the earliest, and inquired into whether UPS would at least be amenable to providing the accommodations recommended by Dr. Tymeson. (*Id.* at Exs. 12 & 17.) He concluded his letter by opining that Francis was definitely suffering from a disability, due to his depression, and that Dr. Entner was prepared to provide any additional information UPS might request. (*Id.* at Ex. 12.) Cusson received this letter, but did not respond to it. (Cusson Depo. at 34.) Instead, he forwarded the letter to counsel for UPS on March 29, 2001. (*Id.* at 36–37.) Counsel for Francis attempted to make facsimile and voice communication with Cusson on several other occasions over the next several days, but Cusson, though he received these communications, neither responded to them nor forwarded the messages contained therein to counsel or anyone else at UPS prior to terminating Francis. (*Id.* at 40, 49–55.)

On April 2, 2001, Francis contacted Funk at the Dayton facility. (Funk Depo.

---

**2.** ERISA requires that plan participants be furnished with written summaries of the details of their plan. *See* 29 U.S.C. §§ 1022(a) & 1024(b).

at 6; Cusson Depo. at 19.) Several days before, Funk had been notified by his division manager, Terry Field, that Francis might be contacting him, and that if that occurred, he was to have Francis contact Cusson. (Funk Depo. at 9–10.) Funk was not told that Francis was actually expected to return to work at the Dayton facility, and he had not made any arrangements for his return. (*Id.* at 10–11, 17–18.) When he contacted Funk at the Dayton facility, Francis explained his situation: that he had been notified by Cusson to report for work but that he was still disputing his ability to do so, and that, in any event, Cusson had not responded to his attorney's messages, such that he was not sure how to proceed. (Francis Depo. at 335–37.) Funk took his phone number and told him not to bother to drive to Dayton, and that he (Funk) would contact Cusson and get back to Francis that day with further instructions. (*Id.* at 303, 336.) Francis did not hear back from Funk. (*Id.* at 303, 345.)

By letter dated April 3, 2001, Cusson informed Francis that his employment had been terminated because of his failure to report to work the previous day, as he had been directed to do. (Doc. # 23 at Ex. 2; Cusson Depo. at 18.) Based on CIGNA's determination that Francis was not disabled, UPS had no intention of making an accommodation for Francis' purported needs, as his counsel had requested. (Cusson Depo. at 48.) Although Francis himself never attempted to contact Cusson personally, neither did he receive any communication from Cusson other than Cusson's letter of March 23, 2001. (Francis Depo. at 340, 349–50.) As an additional matter, counsel for UPS did not respond to counsel for Francis until April 13, 2001, 10 days after Francis had been terminated. (Cusson Depo. at 49–50; Doc. # 23 at Ex. 16.)

With regard to benefits eligibility determinations, CIGNA administered the Group Plan and was responsible for preliminary determinations of eligibility. (Doc. # 23 at Ex. 20, at 106; Cusson Depo. at 25–27.) Ultimately, however, UPS was responsible for deciding any final appeal. (Doc. # 23 at Ex. 20, at 118.) In particular, the Group Plan SPD informs plan participants, such as Francis, of the following claims procedure:

You ... are entitled to a review of a denied claim. The situation should first be appealed to the highest available level with the administrator of the services (e.g., ... CIGNA ...). If you then believe further review is needed on a plan for which UPS decides appeals, you may (within 60 days of the administrator's final appeal denial) submit a written request for an appeal with the UPS Claims Review Committee at the Corporate Headquarters. All appeals to UPS must be submitted through the region Human Resources department.

UPS is not a fiduciary with respect to the benefits or programs for which it does not have the responsibility to decide appeals. * * *

(Doc. # 23 at Ex. 20, at 117.) The SPD then goes on to identify UPS as the final appellate entity for all claims arising under the Group Plan administered by CIGNA. In denying his initial appeal, CIGNA explicitly informed Francis that he had a right to further appeal, and should contact his "Region Employee Services Manager" to facilitate that process. (Doc. # 23 at Ex. 10.)

In its letter of April 13, 2001, to counsel for Francis, counsel for UPS referenced a letter which the former had sent to Cusson on April 4, 2001, which had alluded to Francis' right to appeal CIGNA's decision.[3] Counsel for UPS stated that it

---

**3.** It has been represented that this letter was

sent to Cusson before counsel for Francis had

found the allusion to a right of appeal "puzzling," given that CIGNA's final decision was itself in regard to an appeal of its initial decision of November 13, 2000. (Doc. # 23 at Ex. 16.) Counsel for UPS then stated that if Francis did not agree with CIGNA's decision, he needed "to take whatever steps are appropriate." (*Id.*) The letter made no mention of what those steps might be.

## II. *Summary of Claims and Arguments*

Francis pled nine counts in his Complaint, the third of which constitutes the purported basis for this Court's removal jurisdiction. In that count, Francis alleges that the Defendants breached the terms of the Group Plan. The Defendants removed this action from the Common Pleas Court, contending that Count Three actually states a claim under ERISA. Contradicting themselves, they now move for summary judgment on this claim, arguing that as a state law claim that "relates to" an ERISA plan, it is preempted by ERISA. For his part, Francis argues that it is a common law breach of contract claim, and that it does not relate to ERISA. (He does not, however, move for remand, even though his argument suggests that he disagrees that there is a federal claim in this case.)

As for his claims arising under the laws of the State of Ohio, Francis has stated the following claims: (1) handicap discrimination, in violation of Ohio Rev.Code § 4112.01, *et seq.* (Count One); (2) retaliation, in violation of § 4112.01, *et seq.* (Count Four);[4] (3) interference with one's right to legal counsel, in violation of Ohio public policy (Count Five); (4) tortious interference with employment (Count Six); (5) intentional infliction of emotional distress (Count Seven); and (6) a general violation of Ohio public policy (Count

Eight). In addition, his wife, Louise Francis, has stated a claim for loss of consortium (Count Nine). For damages, Francis seeks (1) reinstatement with back pay and lost benefits, or (2) front pay and other equitable relief in lieu of reinstatement, (3) compensatory and punitive damages, and (4) costs and interest. The Defendants contend that these state law claims must fail either on their merits or because they are not cognizable under the common law of Ohio.

## III. *Analysis*

Because it is the basis for this Court's jurisdiction, the Court will first consider the Defendants' argument as to Count Three of the Complaint, for breach of contract, which they contend must fail on preemption grounds.

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), states:

> Except as provided in subsection (b) of this section, the provisions of this subchapter ... shall supercede any and all State laws insofar as they now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. * * *

The Supreme Court has construed § 514(a) to be a broad-sweeping provision. *See Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Generally speaking, this section supports a "conflict preemption" defense in cases where a plaintiff attempts to get relief under a state law theory that relates to an ERISA plan but does not state a claim under ERISA itself. As the Supreme Court has stated, conflict preemption arises where compliance with both federal and state law is physically impossi-

---

become aware that Francis had been terminated. (Doc. # 23 at 7.)

4. The Plaintiffs have abandoned Count Two, for age discrimination. (Doc. # 23 at 12 n. 9.)

ble or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

In Count Three, for breach of contract, Francis alleges the following: "Pursuant to Defendant UPS Flexible Benefits Plan, Plaintiff Paul Francis was entitled to receive short-term benefits, during his most recent illness." (Compl.¶ 55.) "Defendants wrongfully terminated short-term disability benefits payable to Plaintiff Paul Francis in violation of the Flexible Benefits Plan." (*Id.* ¶ 56.) In addition, in arguing against a finding of preemption in his Memorandum in Opposition, Francis stresses how the language of the Group Plan demonstrates why UPS is liable to him for lost benefits thereunder. (Doc. # 23 at 17–20.)

■ There is no question that the Group Plan is an ERISA welfare benefits plan. *See* 29 U.S.C. § 1002(1). Given that fact, and in light of the pleadings, the Court does not find merit in Francis' argument that his breach of contract claim does not "relate to" the Group Plan. Since the Court cannot possibly evaluate the merits of this claim without referring to the terms of the Group Plan upon which Francis relies to state that claim, it constitutes a garden variety example of a purported common law claim that "relates to" an ERISA plan.

■ That finding is not conclusive of anything, however. "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *see also Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir.1995); *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir.1995) (*en*

*banc*). This point is important. If the breach of contract claim merely "relates to" the Group Plan, but does not state a claim cognizable under ERISA, removal was improper, the Court lacks subject matter jurisdiction, and the cause must be remanded to the Common Pleas Court. If removal was proper in this case, it must have been based on something more than the argument that the breach of contract claim is preempted by § 514 of ERISA; it must have been based on the contention that it actually states a claim under § 502(a).

An ERISA plan participant's only remedies under ERISA are those provided by § 502(a), which provides a plan participant the right to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and "to obtain other appropriate equitable relief" to redress violations of ERISA or the plan or "to enforce the terms of the plan." Relevant to the herein discussion, a claim that could be raised under § 502(a), but which is stated in the complaint as a claim arising under state law, necessarily states a federal claim under § 502(a). *See Taylor*, 481 U.S. at 66–67, 107 S.Ct. 1542. This is known as "complete preemption." Because such claims are inherently federal in nature, they are removable to federal court pursuant to 28 U.S.C. § 1441. *Id.* at 67, 107 S.Ct. 1542.

■ Conflict preemption and complete preemption are distinct and mutually exclusive concepts. Asking whether a state law claim is preempted by § 514 or actually states a claim under § 502 (i.e., is completely preempted) raises two separate questions. A state law claim cannot at once be preempted by § 514 and completely preempted by § 502. *See, e.g., Warner*, 46 F.3d at 535; *Michigan Dept. of Trea-*

*sury v. Michalec,* 181 F.Supp.2d 731, 735 (E.D.Mich.2002); *Erbaugh v. Anthem Blue Cross & Blue Shield,* 126 F.Supp.2d 1079, 1081 (S.D.Ohio 2000); *Stewart v. Berry Family Health Ctr.,* 105 F.Supp.2d 807, 811 (S.D.Ohio 2000); *Tovey v. Prudential Ins. Co. of Am.,* 42 F.Supp.2d 919, 921–25 (W.D.Mo.1999). Yet, this is exactly what the Defendants contend in this case. In their Notice of Removal, they state that "Plaintiffs assert claims under" ERISA. (Notice of Removal ¶ 4.) In their primary memorandum, they argue otherwise: that the breach of contract claim is "a claim arising under state law." (Doc. # 21 at 24.) They reiterate the latter argument in their Reply Brief (Doc. # 24). Their argument is internally inconsistent.

The Supreme Court has never held that "complete" preemption means only that a federal court gets to decide the "conflict" preemption question. Rather, "complete preemption" is premised on the notion that the "completely preempted" state law claim arises under federal law, such that the Court must "recharacterize" the state law claim, and view it as a federal claim from its very inception. *See Taylor,* 481 U.S. at 64, 107 S.Ct. 1542. If Francis' breach of contract claim is merely preempted under traditional "conflict" preemption principles, under § 514 of ERISA, then, pursuant to the well-pleaded complaint rule, that fact gives the Defendants a federal defense to invoke in state court, but it does not allow them to remove the action to this Court. *See id.* ("ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law."); *Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126; *Tolton,* 48 F.3d at 941; *Warner,* 46 F.3d at 534 ("Thus, § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144.").

If that is the case herein, then the Court must remand the cause to the state court, for lack of subject matter jurisdiction. If, on the other hand, the breach of contract claim is completely preempted by § 502, then it is properly before the Court, not, however, as a breach of contract claim under state law, but as a claim arising under § 502 of ERISA. *See Taylor,* 481 U.S. at 66–67, 107 S.Ct. 1542.

Put simply, a defendant cannot remove an action on the basis that it states a claim under ERISA, and then move to dismiss or for summary judgment on the basis that it is preempted by ERISA. *See Warner,* 46 F.3d at 535 ("The Court in [*Van Camp v. AT & T Info. Sys.,* 963 F.2d 119 (6th Cir.1992) ] did not keep complete preemption removal and ordinary preemption doctrine separate and distinct. * * * It said erroneously that plaintiff's state cause of action arises under federal law for purposes of removal but then dismissed it because federal law grants no superseding or related cause of action."); *Erbaugh,* 126 F.Supp.2d at 1082 ("It would defy logic, however, for the Court to allow removal on the basis that the Plaintiffs' Complaint contains federal causes of action, *arising under* ERISA from their inception, and then to grant summary judgment and enter final judgment against the Plaintiffs, because their claims are *preempted by* ERISA.") (emphasis in original) (citation omitted). Such a result would amount to nothing short of a finding that the claim is dead on its arrival in federal court; that the ERISA claim preempts itself. The Supreme Court could not possibly have intended such a bizarre result, which serves no other purpose than to waste judicial resources, given that state courts are just as competent as federal courts to dismiss claims preempted under traditional principles of conflict preemption. *See Mottley,* 211 U.S. at 152–54, 29 S.Ct. 42.

Section 502 is much narrower in scope than § 514, meaning that many state law claims that are not cognizable under the former will nevertheless be preempted by the latter. *See Warner*, 46 F.3d at 535. An obvious corollary to this is that claims which are cognizable under § 502 will "relate to" ERISA plans, but for the reasons already stated, this does not mean they will be preempted by § 514. Because they are completely preempted by § 502, they must be construed as original claims under § 502, and it should go without saying that a claim which arises under ERISA cannot also be preempted by ERISA.

The threshold question presented herein is whether the breach of contract claim, Count Three of the Complaint, actually states a claim under § 502(a)(1)(B), such that the Court may entertain it as an ERISA claim. If the answer is "yes," as the Defendants stated in their Notice of Removal, then the Court can proceed to hear this case. If the answer is "no," as the Defendants now argue in turnabout fashion in their Motion, then the Court must remand the entire action, for it would lack subject matter jurisdiction. As noted, it cannot be both.

The Group Plan SPD stated the following:

*Who Qualifies for STD Benefits?*

For STD purposes, you are considered disabled if the plan administrator, CIGNA, determines that you are unable to perform the material and substantial duties of your regular occupation because of an illness or injury.

Qualifications for STD benefits is subject to CIGNA obtaining information supporting your disability. You may also need medical approval prior to returning to work.

* * * If you are eligible for long-term disability ["LTD"] benefits, CIGNA will automatically review your case for LTD coverage, or you may call CIGNA to discuss your eligibility for LTD.

(Doc. # 23 at Ex. 20.) Furthermore, the correspondence to Francis from CIGNA, the first of which indicated that his STD benefits would be discontinued, dated November 13, 2000 (Doc. # 23 at Ex. 3), the second of which affirmed its discontinuance of STD benefits, dated March 16, 2001 (*id.* at Ex. 10), made it clear that CIGNA, not UPS, was responsible for making his initial benefits eligibility determination. The significance of this evidence is that it suggests that while Count Three, read literally, appears to be a claim for the recovery of ERISA benefits, Francis does not appear to be seeking to recover benefits from the entity that was actually responsible for determining whether he was eligible to receive them in the first instance, *viz.*, CIGNA.

Instead of suing CIGNA, Francis has sued UPS, which funded the Group Plan, but was not responsible for making preliminary eligibility determinations. Francis states in his Memorandum in Opposition that he is not seeking to clarify his rights, enforce his rights, or even recover benefits *under the terms of the Group Plan.* He argues that he has stated a common law breach of contract claim, and in so doing relies upon language in the Group Plan SPD *and* statements made by UPS in its Employee Policy Book ("Policy Book"). (*See* Doc. # 23 at Exs. 19 & 20.) Citing phrases from both documents, he argues the proposition that UPS obligated itself to keeping him in its employ until he had fully exhausted his claim appeal, and the independent duty to investigate the accuracy of CIGNA's decision. (*Id.* at 17–20.) "UPS consistently and repeatedly contracted or covenanted that 'concern for the security and well being of you and your family is the cornerstone of our benefits philosophy.'" (*Id.* at 18 (citing the SPD).) He suggests that the consideration he gave

in return was his decision to continue his employment with UPS. (*Id.*) Because UPS breached its duty, Francis argues, UPS should be held independently responsible for all of the benefits he might have received had he been successful in a final appeal. Thus, while on the face of his Complaint, Francis appears to be pleading an ERISA claim for recovery of benefits or to enforce his rights under the Group Plan, his present argument tends to suggest that it is not an ERISA claim at all, but is instead a claim for breach of a contract, the existence of which was implied by various written statements published by UPS to its employees, tending to show, he argues, that it considered the welfare of its employees to be of paramount importance.

■ A plaintiff is the master of his complaint. *See Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 831, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002). If he so desires, he may eschew federal claims, even where such exist, and exercise his prerogative to proceed in state court pursuant to state causes of action. *See id.* Under § 502(a)(1)(B) of ERISA, Francis could certainly seek to recover benefits from CIGNA, by challenging its decision denying him the same. *See Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir.1998). If he did so, the proper procedure would be for him to sue CIGNA directly. *See id.* If such were the case, the Court's review would be limited to the administrative record, and Francis and CIGNA would be afforded the opportunity to file cross-motions on the merits of CIGNA's eligibility determination. *See id.* That is not this case. Francis has not sued CIGNA, and the parties have not stipulated to a complete administrative record, which would consist of *all* the documents and medical records considered by CIGNA, which caused it to discontinue Francis' STD benefits. All other facts and exhibits, such as the various

deposition statements cited by the parties herein in their respective memoranda, would be irrelevant (with respect to that claim).

■ Whether Francis' theory of recovery is viable under Ohio contract law is irrelevant for the present. The only question relevant to the Court at this time is whether Francis' breach of contract claim actually states a claim under § 502(a), which, as noted, is a narrower question than whether it "relates to" the Group Plan, which it obviously does. The Court finds that it does state such a claim. Despite the arguments raised in his Memorandum in Opposition, the Court finds it to be an inescapable conclusion that in alleging that the "Defendants wrongfully terminated short-term disability benefits payable to Plaintiff Paul Francis in violation of the Flexible Benefits Plan" (Compl.¶ 56), Francis pled a claim for the recovery of Group Plan benefits or enforcement of rights given by the Group Plan, pursuant to § 502(a)(1)(B) of ERISA. Removal was therefore proper.

Having determined that the Defendants properly removed this action, the question becomes whether Count Three, recharacterized herein as an ERISA claim, can survive summary judgment. As noted, the Defendants' primary argument is that it cannot, because it is preempted by § 514. For the reasons already stated, this argument is without merit. A claim arising under § 502 of ERISA cannot be preempted by § 514 of ERISA.

As an alternative argument, they contend that they are entitled to summary judgment under the standard set forth in *Wilkins, supra.* To this end, in their Reply Brief, they state:

> Despite Plaintiff's characterization of the facts, Plaintiff's breach of contract claim, which allegedly is based on UPS's failure to diligently review Plaintiff's medi-

cal documents prior to accepting Cigna's determination, *is* related to an employee benefit plan as defined under ERISA and thereby is preempted by ERISA. [Emphasis in original.] Reviewing Plaintiff's arguments, his real issue lies with the determination made by Cigna, the Plan administrator. Such a claim requires the application of the procedures set forth in [*Wilkins, supra*]. Under *Wilkins*, this Court should limit its review to the administrative record, which was before Cigna, and the only matter for the Court's determination is whether or not Cigna's denial of Plaintiff's benefits was arbitrary and capricious.

(Doc. # 24 at 8 (footnotes omitted).) The Defendants then proceed to explain why CIGNA's decision was not arbitrary and capricious. (*Id.* at 9–10; *see also* Doc. # 21 at 27–28.) Were CIGNA named as a Defendant herein, the Court would agree that the *Wilkins* standard would govern. The glitch for the Defendants is that CIGNA is not a Defendant and the complete administrative record is not before the Court. If Francis had desired to file an ERISA claim for benefits against CIGNA, then he could have done so, but that is not the claim he filed, and the Defendants cannot step into the shoes of CIGNA to argue its defense to a hypothetical claim.

▋ Though several points of law raised by the Defendants in their defense are correct,[5] they have overlooked one material aspect of Francis' claim which appears to have merit, to wit: that UPS was obligated to entertain an appeal of CIGNA's decision to terminate his STD benefits. After denying his first appeal, CIGNA directed Francis to review the terms of his Group Plan and to contact the appropriate UPS manager regarding his right to appeal further. (Doc. # 23 at Ex. 10.) Under the terms of the Group Plan, UPS, not CIGNA, was the entity with final appellate authority over a claim for benefits. (*Id.* at Ex. 20, at 118.) By the terms of the Group Plan, UPS owed a fiduciary duty to Francis to hear his appeal. (*Id.* at Ex. 20, at 117.)

Obviously, UPS's duty in this regard could only have been triggered if Francis had first initiated the proper appeals process, and there is no evidence that Francis actually appealed CIGNA's decision of March 16, 2001. However, as the facts set forth above make plain, when construed in a light most favorable to Francis, there is ample evidence that UPS and its counsel were, or should have been, on notice of his desire to contest and appeal CIGNA's decision, but that he was never afforded that right or opportunity. Counsel for Francis notified Cusson on multiple occasions of Francis' status, that Francis' preference was not to return to work on April 2, 2001, that he would at least appreciate certain accommodations, but that, if necessary to save his job, he would return under any condition. Cusson purposefully refused to respond. Counsel for UPS also did not respond until 10 days after Francis had been terminated. Even putting those facts aside, under the terms of the Group Plan and the governing ERISA regulations, Francis was entitled to a 60–day period to appeal CIGNA's final denial of his claim. (*Id.*); 29 C.F.R. § 2560.503–1(g)(3) (2000). Obviously, he was never

---

5. For example, Francis' reliance upon an introductory statement in the SPD stating that "concern for the security and well being of your family is the cornerstone of our benefits philosophy" (Doc. # 23 at Ex. 20, at 1), and a provision in the Policy Book stating that in situations where an employee has a complaint, the company's goal was to give the employee "the benefit of the doubt" (*id.* at Ex. 19, at 34), is not well taken. The Defendants correctly point out that these statements did not confer any legal rights upon Francis or duties upon UPS under the terms of the Group Plan.

given that opportunity. Instead, he was terminated for the very issue which lay at the heart of his putative appeal: his ability to work as of April 2, 2001.

Under ERISA, CIGNA, having denied Francis' initial appeal, was obligated to provide him with written notice of its decision, and the grounds therefore. *See* 29 U.S.C. § 1133(1); 29 C.F.R. § 2560.503–1(f) (2000). There does not appear to be any argument that this was not provided (and, of course, CIGNA is not a Defendant in any event). Francis was also entitled to "a reasonable opportunity" to receive "a full and fair review" of CIGNA's decision. *See* 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503–1(h)(2) (2000). CIGNA told Francis to contact his "Region Employee Services Manager" regarding any further appeal. (Doc. # 23 at Ex. 10.) For the time being, the Court assumes this was a reference to Cusson, who was the Human Resources Manager for UPS for the district encompassing Dayton, and who, per the terms of the Group Plan, would have been responsible for ushering through the final appeal. (*See* Doc. # 23 at Ex. 20, at 117.)

In defense of their position that Francis was terminated in good faith, because he did not report to work on April 2, 2001, the Defendants contend that it was the company policy to communicate exclusively with employees, not their attorneys, and that Francis never attempted to contact Cusson, as he had been directed to do by Cusson's letter of March 23, 2001. This position is specious. The regulations promulgated by the Department of Labor, pursuant to 29 U.S.C. § 1135, which were effective at the time Francis filed his claim, expressly required that an ERISA plan allow a claimant to appeal a claim denial through his "authorized representative." 29 C.F.R. § 2560.503–1(g)(1) (2000). Thus, even if UPS and Cusson had a well-established, good-faith basis for wanting to

speak with Francis personally, that did not divest them of their legal obligation to recognize his right to appeal the denial of his STD claim through his attorney, and to the extent their actions obstructed his counsel's efforts to pursue such an appeal, including his effort to make a determination that such an appeal would be necessary, they were unlawful.

Although the Group Plan appeared to give him, or at least the department he oversees, responsibility for processing appeals from the decisions of CIGNA, at his deposition, Cusson seemed unaware of how the appeals process worked. (Cusson Depo. at 27–28.) There is evidence that counsel for UPS was also unaware of the proper appeals process. (Doc. # 23 at Ex. 16.) Whatever knowledge of the terms of the Group Plan the Defendants and their counsel may have had at the time, their expressed ignorance of the appeals process only reinforces the inference that UPS did not honor the terms of the Group Plan, or its fiduciary duty to Francis to entertain his appeal.

Furthermore, the Defendants' assertion that it was their policy to speak *only* to their employees appears disingenuous in light of written policies contained in the UPS Policy Book. (Doc. # 23 at Ex. 19.) Therein, UPS purports to tout the importance of "cooperation and teamwork" among its managers, supervisors and employees, "to foster ... meaningful businesslike relationships and better communications." (Doc. # 23 at Ex. 19, at 29.) It also purports to treat its employees "fairly." (*Id.* at Ex. 19, at 32.) Furthermore, with respect to workplace complaints, though admittedly not an issue herein, UPS purports to recognize the importance of communication between management and employees, lest "even minor misunderstandings escalate into major dissatisfactions." (*Id.* at Ex. 19, at 34.) While the

Court does not agree with Francis that these types of representations created contractual rights, they go a long way to rebutting the Defendants' claim herein that Francis' termination and current legal dispute are the result of his own failure to communicate with Cusson personally. UPS's purported policy to speak only to its employees, and not to their attorneys, does not appear in any written document adduced by the Defendants. This is not to say that such a practice did not exist, and, indeed, Francis himself suggested at his deposition that it was a common practice. (Francis Depo. at 341.) Yet, to insist that this practice was anything more than aspirational; that it was a firmly rooted policy from which the company steadfastly did not waiver, not only ignores what is required under ERISA, but seems to contradict the spirit of communication that UPS purported in its Policy Book to champion.[6]

Having said this, the Court finds that the Defendants are not entitled to summary judgment on Count Three of the Complaint for the reasons they have argued in their Motion for Summary Judgment. Of course, the Court also finds Francis' own argument, that his claim states only a common law claim for breach of contract, to be without merit. At the end of the day, neither party is correct on how Count Three should be construed. The Court finds that said claim can be construed as an action to enforce Francis' rights under the terms of the Group Plan, 29 U.S.C. § 1132(a)(1)(B), and/or as an action to obtain other appropriate equitable relief to redress UPS's violation of its fiduciary duty to entertain Francis' appeal, or to enforce Francis' right to same, *id.* § 1132(a)(3)(B), to wit: to require UPS to entertain an appeal of CIGNA's determination that Francis was no longer eligible for STD benefits. Were Francis to join CIGNA as a Defendant, Count Three could also be construed as stating a claim to recover benefits.[7]

■ Because the parties are not in agreement with the nature of Count Three of the Complaint, the Court is reluctant to proceed to consider the Defendants' Motion for Summary Judgment as it regards the remainder of the claims. As noted, a plaintiff is generally the master of his complaint. It is plain that Francis did not intend to plead an ERISA cause of action, and that he has so only unwittingly, pursuant to the complete preemption doctrine, as recognized in *Taylor, supra.* Given that he is before this Court not by choice, he should be granted leave to amend his Complaint, as he has requested. (Doc. # 23 at 20.) If he has no inclination to pursue the ERISA claim, he should be afforded the opportunity to drop it from the Complaint, and if that were the case,

6. When the facts are construed in a light most favorable to Francis, it appears that the only communication Cusson or anyone else at UPS made to Francis was the brief letter of March 23, 2001, informing him to report to work on April 2, 2001, without specifying a time or place (or notifying the manager at the Dayton facility to expect Francis' return). Thus, even if it was a firm policy of UPS managers to communicate exclusively with their employees on a person-to-person basis, it does not appear they made much effort with respect to Francis, considering the consequences at stake.

7. Admittedly, this is how the claim appears to be stated in the Complaint, and if the Court were to limit its construction to these parameters, arguably it would have to be dismissed because it fails to name the correct party Defendant, *viz.,* CIGNA. The Court does not limit its construction to these parameters, however, because, *first,* the Defendants did not raise this argument as a basis for dismissal, and *second,* for the reasons stated below, it believes that Francis should be given the opportunity to amend his Complaint to conform to the facts, given the fact that he did not anticipate litigating an ERISA claim in this Court.

the Court might find itself inclined to remand the action to the Common Pleas Court, which would be the more appropriate forum for deciding the remaining state law claims. If, on the other hand, Francis is inclined to pursue the ERISA claim, he should be given leave to amend Count Three, so as to articulate his theory, keeping in mind the limitations noted by the Court herein.

Francis should take note of one caveat, however. Although the Court shall grant him leave to amend his Complaint, he should be aware that it will do him no good to restate a breach of contract claim. If such were not also completely preempted by § 502, and thus recharacterized as a second ERISA claim, it would certainly be preempted and dismissed under § 514. There is simply no way to recover ERISA plan benefits, or any damages arising under or relating to an ERISA plan, without going through ERISA itself. *See Taylor,* 481 U.S. at 64, 107 S.Ct. 1542 (stating that the preemptive effect of the law "is so powerful as to displace entirely any state cause of action"); *Caffey v. UNUM Life Ins. Co.,* 302 F.3d 576, 582 (6th Cir.2002).

Accordingly, Francis' request for leave to amend his Complaint (Doc. # 23 at 20), construed herein as a Motion for Leave to Amend, is SUSTAINED, and he shall have 20 days from date to do so. The Defendants' Motion for Summary Judgment (Doc. # 21) is OVERRULED. As to the arguments the Defendants have advanced concerning Count Three, this ruling is with prejudice. The ruling is without prejudice to the renewal of their arguments, should the appropriate situation present itself, concerning the pending state law claims, and to any supplemental arguments they deem appropriate, should Francis retain

his ERISA claim in his amended complaint. The Court shall direct the parties with further procedures once Francis has filed his amended complaint, and the Court has had the opportunity to consider the substantive nature of its pleadings.[8] If necessary, a further scheduling conference will be convened.

8. The Court recognizes the potential conflict of interest that counsel for Francis has in this case, pointed out by Defendants in their Reply Brief (Doc. # 24 at 2 n. 3), given the apparent materiality of his communications to Cusson and UPS. The Court will consider this serious matter in greater detail should the need to do so arise.