**NOT RECOMMENDED FOR PUBLICATION**
File Name: 10a0056n.06

**No. 08-4673**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jan 28, 2010**
LEONARD GREEN, Clerk

| | |
|---|---|
| MARK F. LONGAZEL, | ) |
| | ) |
|     Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| | ) THE NORTHERN DISTRICT OF |
| FORT DEARBORN LIFE INSURANCE | ) OHIO |
| COMPANY and DISABILITY REINSURANCE | ) |
| MANAGEMENT SERVICES, INC., | ) |
| | ) |
|     Defendants-Appellees. | ) |
| | ) |
| | ) |

Before:  SILER, ROGERS, and McKEAGUE, Circuit Judges.

**SILER, Circuit Judge**.  Mark F. Longazel appeals the district court's grant of summary judgment to Fort Dearborn Life Insurance Company ("Fort Dearborn") and Disability Reinsurance Management Services, Inc. ("Disability RMS" or "the Plan Administrator") (collectively, "the Defendants").  Longazel sued under the Employment Retirement Income Security Act ("ERISA") to receive disability benefits under a group long-term-disability insurance policy plan ("the Plan") issued by Medical Life, Fort Dearborn's subsidiary, as a benefit to employees of MIA Transportation Services, Inc. ("MIA").  Longazel objects to the district court's refusal to extend him additional time for discovery and the court's holding that Longazel failed to timely file his lawsuit or, alternately, that he failed to exhaust his administrative remedies.

For the following reasons, we **AFFIRM**.

No. 08-4673
*Longazel v. Fort Dearborn, et al.*

## I. Background

While serving as the president and chief executive officer of MIA, Longazel executed the Plan in October 1998. The Plan includes a provision that limits the time during which an insured may file a lawsuit to "3 years after the time proof of claim is required." An insured must file a proof of claim "no later than 90 days after the end of the elimination period." The elimination period is defined as "consecutive days of disability" running for 180 days and during which no benefit is payable.

On September 13, 2002, Longazel injured his spine at his place of employment. In 2003,[1] he submitted a claim for long-term-disability insurance benefits to Fort Dearborn.[2] After receiving no response from Fort Dearborn, he again contacted the company and was told that it had no record of his claim. He resubmitted his claim on May 3, 2003.

On September 9, 2003, Disability RMS acknowledged receipt of Longazel's claim for long-term-disability benefits. Longazel does not deny receiving this letter, which informed him that the Plan Administrator needed to receive a claim form "completed by [Longazel's] employer" to complete review of his claim. The letter also included a copy of the company's "Claim Review Procedures," which stated that Disability RMS would make a determination on the claim no later than forty-five days after receipt of it, with possible thirty-day extensions if additional information

---

[1] He alleged that the reason for his delay in filing was that Fort Dearborn told him to wait six months before filing a claim.

[2] By this point, Medical Life had merged into Fort Dearborn. Fort Dearborn assumed all Medical Life's obligations under the Plan. Thus, we will heretofore refer only to Fort Dearborn.

or documents were required. These thirty-day extensions would not, according to the letter, extend beyond a total of 105 days. In addition, the letter stated that Longazel would be notified in writing of the extension and "specific reasons" for any delay. In the event of an extension, Longazel would "be allowed at least [forty-five] days to provide any information needed from [him]," a period of time that would "not count toward the extension period time limit." Furthermore, in the event "[his] claim [was] denied, Disability RMS [would] provide [him] with a letter stating the specific reason(s) for the adverse determination[,] . . . a description of any additional information or material necessary to perfect the claim[,] and an explanation as to why such material is necessary." Finally, the letter set forth the appeals process, specifically noting Longazel's right to appeal within "180 days, following receipt of an adverse benefit determination."

On September 11, 2003, Disability RMS sent Longazel a second letter, which requested that he complete the signed authorization form that had been previously sent to him, and notified him that it had still not received his employer's claim form, which, as MIA's president, Longazel could complete himself. The letter stated that if after receiving these documents Disability RMS determined that Longazel was "eligible" under the Plan, it would then request medical records from his treating physicians. In addition, this letter extended Longazel's deadline to file these two documents to forty-five days from receipt of the letter.[3]

Because Longazel did not submit the requested documents within the forty-five day extension period, Disability RMS denied Longazel's claim for disability in a letter dated October 31, 2003.

---

[3]Longazel does not dispute receiving this letter.

Longazel claimed that he did not receive this letter. He did admit receiving a certified letter from Fort Dearborn regarding his separate claim for a waiver of premium on March 28, 2004.[4] Although it did not specifically address his disability claim, this letter stated that he had failed to prove "Total Disability" "from any occupation for wage or profit because of sickness or injury." Longazel also acknowledged receipt of a letter from Fort Dearborn, dated July 28, 2006, in response to his attorney's request for information about the status of Longazel's long-term-disability claim. The letter stated that Longazel's benefits had been denied and included a copy of the October 2003 denial letter, which set forth Longazel's rights to appeal the adverse disability determination.[5] Thus, Longazel maintains that he did not receive notice of the denial of his disability claim until he received this letter in 2006.

On November 27, 2006, Longazel sued the Defendants in state court. His case was removed to federal court, and the district court granted summary judgment for the Defendants. The district court first denied Longazel's request to pursue additional discovery. It then held that Longazel's action was time barred, or, in the alternative, that he had failed to exhaust his administrative remedies.

---

[4]Longazel never appealed this separate denial of premiums, and thus this claim is not before us.

[5]Longazel hired a second attorney, Steven John Futterer, who, in October 2006, also inquired about the status of Longazel's long-term-disability claim. In an October 20, 2006, letter, Fort Dearborn repeated the substance of the July 2006 missive. Futterer ultimately represented Longazel in the present suit, but he moved to withdraw after the district court ruled against his client on summary judgment.

## II. Standard of Review

"We review de novo the district court's disposition of an ERISA action based upon the administrative record, and apply the same legal standard as the district court." *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998)).

## III. Discussion

The district court held that Longazel's action was procedurally barred, because it was commenced beyond the three-year limitations period provided by the Plan. The Plan states that no legal action shall be brought "until 60 days after proof of claim has been given; nor more than 3 years after the time proof of claim is required." As discussed above, the Plan stipulates that a proof of claim[6] is required "no later than 90 days after the end of the elimination period," which is marked as a period of 180 days of consecutive disability. We have previously recognized that the time at which a proof of claim is required may trigger the start of a limitations period in ERISA cases. *See Clark v. NBD Bank*, 3 F. App'x 500, 503-05 (6th Cir. 2001) (per curiam) (holding that plaintiff's ERISA action was untimely filed where contract limited time for bringing suit to three years after "written proof of loss [was] required" and refusing to apply equitable tolling because plaintiff "was not diligent in pursuing her rights").

Longazel has continued to allege that the Defendants failed to acknowledge his claim or the documents offered in proof of it, and that they failed to deny his disability claim until 2006. His

---

[6]Under the Plan, proof of claim "must cover[:] (i) the date disability started; (ii) the cause of disability; and (iii) the degree of disability."

arguments miss the mark, however, because any alleged misbehavior on the part of the Defendants regarding the processing of his claim is inapposite to application of the contracted-to limitations period, which depends not on the date his disability claim was denied (an arguably disputed fact), but on the date the proof of claim was required (an undisputed fact). The limitations provision in the Plan was triggered on the date the proof of claim was required, which itself depends on the date on which the elimination period began. The parties do not dispute that the elimination period began to run on September 13, 2002, the date on which Longazel alleges he was injured. Thus, his proof of claim was due on June 10, 2003, ninety days after the elimination period had ended on March 12, 2003. Assuming all Longazel's claims regarding the mis-processing of his claim to be true, his lawsuit was still untimely filed on November 27, 2006, as the limitations period expired on June 10, 2006.

Longazel argues that equitable tolling should be applied in his case. He alleges that the Defendants purposely obfuscated his claims process by falsely asserting they did not receive his proof of claim, by requesting information he had previously sent to them, and by failing to deny his claim until 2006. The district court did not specifically address Longazel's equitable-tolling argument, but the facts of the case do not warrant application of the doctrine. Rather, equitable tolling of a limitations period is only appropriate after a court has considered the following factors:

> (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.

*Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). Longazel does not argue that he had no notice

of the three-year limitations period for filing suit. Instead, he relies on the fact that the Defendants

did not formally deny his application until 2006 and his allegations of the Defendants' misbehavior.

In *Clark*, an ERISA plaintiff raised a similar argument on appeal to support her application for

equitable tolling of a three-year limitations period. 3 F. App'x at 504-05. However, in *Clark*, the

plaintiff also asserted that she was, at her time of injury, not aware of the existence of the limitations

period. *Id.* Despite this lack of notice, we affirmed the district court's decision not to apply

equitable tolling, based chiefly on the plaintiff's "lack of diligence" in following up on her claim.

*Id.* at 505. Similarly, in the instant case, Longazel failed to diligently pursue his claims before the

administrative body by, for example, waiting for almost three years before inquiring through counsel

about the status of his disability claim. In addition, the Plan outlined the limitations period, which,

like the Plan in *Clark*, did not depend on the denial of his disability claim. Thus, Longazel's claim

that the Defendants did not deny his disability claims until 2006 does not excuse his failure to inquire

about the status of his claim until 2006 or to pursue a lawsuit against the Defendants within the

agreed-upon limitations period.[7] We affirm the district court's decision that the action was time

---

[7]Thus, we are not faced with a situation where a Plan Administrator waited until after the limitations period ended to deny a claim.

barred[8] and thus need not address the court's alternate holding on exhaustion of administrative

remedies.

AFFIRMED.

---

[8]Longazel also argues that the district court erred in refusing his request for additional discovery.  The district court held that additional discovery "would not change the legal outcome [of the case] based on the time limitations bar" and that Longazel had failed to meet his burden to demonstrate a procedural violation to justify discovery of evidence outside the administrative record.  Given our holding that the action is time barred regardless of Longazel's claims of misbehavior on the part of the Defendants, we need not address this issue.