NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0495n.06

No. 16-3043

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 23, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CHRISTINA SAUNDERS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| PROCTER & GAMBLE HEALTH AND LONG-TERM DISABILITY BENEFIT PLAN, | ) | SOUTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE:   BATCHELDER and KETHLEDGE, Circuit Judges; LEVY, District Judge[*]

**ALICE M. BATCHELDER, Circuit Judge.**   Former Procter & Gamble (P&G) employee Christina Saunders has an unexplained chronic pain condition.  From April 2012 until July 2013, Saunders received disability benefits from the P&G Health and Long-Term Disability Benefit Plan (the Plan) for a claimed "total disability."  But when the Plan switched third-party administrators, the new administrator concluded that Saunders had not furnished objective medical evidence establishing her disability.  Accordingly, it terminated her payments.  Saunders lost her administrative appeal and at summary judgment below.  We AFFIRM.

## I.  FACTS AND PROCEDURAL HISTORY

Saunders's health problems began in April 2012, when she underwent surgery for a ruptured ectopic pregnancy.  Although her surgeon originally scheduled her to return to work on

---

[*]The Honorable Judith E. Levy, United States District Judge for the Eastern District of Michigan, sitting by designation.

April 30, 2012, Saunders began experiencing additional, unexplained pain and did not go back to work. She sought a diagnosis and effective treatment for over a year, to no avail. No doctor officially extended Saunders's work restrictions, but the Plan's third-party administrator, Reed Group, continually approved her disability benefits.

In July 2013, the Plan switched third-party administrators to GENEX Services, Inc. GENEX contacted Saunders's doctors to confirm her eligibility for benefits. On August 1, 2013, Dr. Scott Long, a physical therapist who treated Saunders from June 2012 through July 2013, indicated that there were no medical restrictions on Saunders's ability to work "at this time."[1]

Subsequent follow-up with Saunders and with her other doctors' offices failed to reveal any work restrictions on file. Without a doctor's note stating that Saunders could not work, the GENEX case manager recommended terminating Saunders's disability benefits.

The Plan sent Saunders a letter, dated September 17, 2013, informing her that her benefits were terminated effective July 20, 2013. The letter detailed GENEX's failed attempts to obtain from Saunders's physicians "objective medical documentation" that Saunders was "unable to work." From this the Plan concluded that "there is insufficient objective medical information to support your claim for disability as defined by the Plan." The letter included the Plan's definition of total disability, stated the requirement that Saunders "furnish . . . additional objective medical records, clinical notes or testing results to indicate that [she was] disabled as

---

[1] In this same response, Dr. Long erroneously stated that Saunders was "[c]urrently working." This error, Saunders suggests, indicates that Dr. Long must have gotten her records confused with another patient's. Appellant's Br. at 41. However, Saunders herself submitted records from a July 2013 visit with Dr. Long in which Dr. Long noted that Saunders "[w]orks as a PR manager." Dr. Long may have been mistaken about Saunders's work status, but this is enough to refute Saunders's speculation that he was referring to someone else.

defined by the Plan," and outlined her right to appeal the decision to the Plan's Board of Trustees.[2]

Saunders appealed pro se. She stated that "[t]he information from Dr. Long was inconsistent with the restrictions imposed by [her] treating physician, Dr. Kelly," who "specifically state[d]" that Saunders was "unable to work." Saunders attached the records from her recent visits with Dr. Kelly, as well as records from a psychiatrist (Dr. Kelso), her acupuncturist, and Dr. Long.

These new records contained evidence of pain, but little to indicate how that pain restricts Saunders's abilities. For example, Dr. Kelly—who saw Saunders in August, October, and November 2013—diagnosed Saunders with "[a]typical pain syndrome, of uncertain etiology," based on "tender[ness] to light/medium touch throughout the right hemithorax." He concluded that "because of the severity of her pain, and relative refractoriness to treatment, . . . she is unable to remain mentally focused enough to perform any form of work activities." But Dr. Kelly's examination revealed that Saunders's "[m]entation [was] clear," and she had "[g]ood recent and remote recall" with "[n]ormal affect." Her muscle tone and gait were normal. Dr. Kelly also noted that Saunders was "able to take care of" her two-year-old child.

Similarly, Dr. Kelso's intake exam in September 2013 was unremarkable, although Saunders's thought process was "[n]ormal but pr[e]occupied with her experience of pain." At a subsequent visit, Dr. Kelso indicated that Saunders appeared "[a]nxious and exhibit[ed] pain behaviors such as wincing and moaning." Saunders's acupuncturist stated that Saunders's "pain level is so extreme that it is hazardous to her physical function and mental-emotional being."

---

[2] Contrary to Saunders's assertions, therefore, this letter *did* inform Saunders what type of objective evidence was necessary to support her claim.

Records from her visits with Dr. Long added nothing to these pain assessments, nor did they indicate a consistent diagnosis. For example, in June 2013 Dr. Long diagnosed Saunders with myalgia, myositis, and chronic pain disorder, stating, "I do not see objective data to support a diagnosis of CRPS (complex regional pain syndrome)." But less than a month later, his diagnosis had changed to complex regional pain syndrome. None of these records indicated any physical restrictions on Saunders's activities.

Before the Board decided Saunders's appeal, GENEX sought an opinion from independent reviewer Dr. Philip Marion. Dr. Marion acknowledged the lack of "specific clinical documentation that [Saunders's] condition ha[d] changed," but he nonetheless concluded that "there is not objective medical information documented to substantiate an inability to work in any capacity, including sedentary, at P&G or with another employer." The Board subsequently denied Saunders's appeal on January 22, 2014.

Saunders then sued the Plan in federal district court, bringing a single claim for benefits under ERISA. *See* 29 U.S.C. § 1132(a). The parties filed cross-motions for judgment as a matter of law on the administrative record. The district court granted the Plan's motion and denied Saunders's motion. Saunders then filed this appeal.

## II. ANALYSIS

We review the Board's decision using the same standard of review as the district court was required to use. *Whitaker v. Hartford Life & Accidental Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). Here, the parties dispute whether the district court should have reviewed the Board's decision for abuse of discretion or de novo. We need not resolve that debate because, even under de novo review, Saunders did not meet her burden of presenting objective evidence to support a

finding that she is disabled within the terms of the Plan. *See Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 700 (6th Cir. 2014) ("To succeed in [a] claim for disability benefits under ERISA, Plaintiff must prove by a preponderance of the evidence that he was 'disabled,' as that term is defined in the Plan.").

The Plan defines "total disability" as

> a mental or physical condition resulting from an illness or injury which is generally considered totally disabling by the medical profession and for which the Participant is receiving regular recognized treatment by a qualified medical professional. Usually, total disability involves a condition of such severity as to require care in a hospital or restriction to the immediate confines of the home.

In her briefing, Saunders does not directly argue that she is disabled according to this definition. She identifies her condition as "complex regional pain syndrome," but does not specifically explain how this condition disables her. For example, she does not dispute her ability to drive or perform other activities of daily living.[3] *See* Appellant's Br. at 44. Saunders does cite several forms of objective evidence to support her diagnosis: (1) the results of "several objective tests" that "demonstrated a physical disorder"; (2) her doctors' findings regarding her pain; (3) the medications she was prescribed; and (4) her doctors' multiple referrals to neurologists and pain specialists. *Id.* at 39–40. Otherwise, her arguments merely attack the Board's reasoning rather than its ultimate decision.

Accepting that Saunders suffers from unexplained, severe, and constant pain, we still must assess whether Saunders has submitted objective evidence that she is *disabled* as defined by the Plan. In other words, her objective evidence must show that her pain is "considered totally disabling" and that she "is receiving regular recognized treatment" for it. Since Saunders's pain

---

[3] In contrast to the Plan's definition of total disability, the Plan defines "partial disability" to include impairments that do not prevent a person "from performing useful tasks, utilizing public or private transportation, or taking part in social or business activities outside the home." Saunders's claim has always been for total disability.

admittedly does not restrict her to her home environment, her task of demonstrating total disability is that much harder. Notably, the Plan does not define "total disability" according to whether Saunders can perform her job.

The primary evidence supporting Saunders's claim that she is totally disabled is Dr. Kelly's assessment that she is unable to focus enough to work. Saunders also presents plenty of evidence that she has a chronic pain condition. But nothing in the record indicates that this pain condition restricts her daily activities, and several of her treating physicians have specifically indicated that Saunders can work. Dr. Kelly's lone opinion that Saunders cannot work does not establish her disability in light of the other evidence in the administrative record.

Most prominent in the Board's decision is Dr. Long's statement on August 1, 2013, that Saunders had work capacity and no medical restrictions. But Dr. Long is hardly alone in his assessment. Nine months prior, Saunders's then-treating physician, Dr. Katheryn Jadeed, stated, "[G]iven the available info, I do not have any work restrictions for her, now or in the past . . . ." And around the same time Dr. Jason Heil, a neurologist, indicated that he was "probably not the best person to be filling out disability papers" since he could not identify "a clear neurological cause for her pain."[4]

Saunders has no objective evidence with which to counter these opinions. For example, she presents no evidence of any physical restrictions, such as on the length of time she may sit or stand, or on the amount of weight she may lift. *See, e.g.*, *Koning v. United of Omaha Life Ins.*

---

[4] Saunders criticizes the Plan's reference to Dr. Jadeed's and Dr. Heil's statements, arguing that they are irrelevant because the Board did not rely on them and because they were made several months before the time frame at issue in this case. Reply Br. at 3–4. Yet on a de novo review, we consider all evidence in the administrative record without deference to the Board's decision. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998) ("When conducting a *de novo* review, the district court must take a 'fresh look' at the administrative record . . . ."). And given Saunders's adamancy that her condition has not changed, her insistence that earlier assessments are irrelevant rings hollow.

*Co.*, 627 F. App'x 425, 434 (6th Cir. 2015) (finding a claimant disabled who was "unable to sit, stand and/or bend for any significant period of time," had restricted range of motion, chronic headaches, and other physical incapacities). Nor is Saunders taking any medications with debilitating side effects. *See, e.g.*, *Godmar v. Hewlett-Packard Co.*, 631 F. App'x 397, 407 (6th Cir. 2015) (holding that a denial of benefits was arbitrary and capricious because, among other reasons, the plaintiff's prescription pain medications prevented him from driving, a requirement of his job). Overall, the record does not support a finding that Saunders's pain condition renders her totally disabled.

The record accordingly supports Dr. Marion's conclusion that, "from a physical medicine and rehabilitation/pain management perspective, there remains no specific medical information to substantiate [Saunders's] inability to work with or without restrictions from [July 20, 2013,] through [the] present." Dr. Marion emphasized Saunders's "consistently normal" musculoskeletal and neurological examinations. He contrasted Dr. Kelly's opinion that Saunders "is unable to remain mentally focused enough to" work with Dr. Long's conclusion that she can. He also noted that Dr. Kelly undermined his own opinion with the results of his physical examination: "Mentation clear. Good recent and remote recall. Normal affect." That the Plan previously awarded benefits and her condition has not changed did not alter this conclusion.[5]

Saunders is therefore left with the argument that, because her condition has not changed, the Board erred in terminating her benefits after awarding them for over a year. But following Saunders's logic, no disability plan would ever be able to terminate benefits that had erroneously been approved at some prior time. As Saunders stated, ironically, in her opening brief, "The best

---

[5] For the same reasons—because the records from Saunders's own doctors supported Dr. Marion's conclusion—the Board was not required to conduct an independent medical examination of Saunders.

that can be said of [GENEX's] review of Saunders'[s] claim is that Saunders was never disabled in the first place[.]" Appellant's Br. at 37. Saunders actually did not present sufficient evidence to support an award of disability benefits for over a year before her benefits were terminated. The Plan was not required to continue paying out benefits to Saunders indefinitely without objective evidence to support her disability simply because a prior third-party administrator had done so and her non-disabling condition had not changed.

### III. CONCLUSION

Because Saunders has not shown by a preponderance of the evidence that she is totally disabled as defined by the Plan, we AFFIRM the judgment of the district court.